USCA1 Opinion

 

 October 7, 1993 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-1050 THEODORE LEBLANC, Plaintiff, Appellant, v. GREAT AMERICAN INSURANCE COMPANY, Defendant, Appellee. ____________________ ERRATA SHEET The opinion of this Court issued on September 29, 1993, is amended as follows: Page 2, line 8: add a "," after " . . . 1993)" Page 2, section I., line 4: insert "of this case" after "history" Page 2, third line from the bottom: delete "," after "appeal" Page 3, line 12: add ", 1992," after December 21 Page 4, line 13: delete "Id;" and insert "Id.; see" __ ___ ___ Page 6, line 8: delete the sentence beginning with, "This conclusion . . . judgment." Page 9, section III., line 2: add a "," after "court" Page 12, footnote 2: delete the last two sentences beginning with, "Lack of reference to the . . . (1986))." Page 13, line 3: add "the" before "plaintiff" Page 13, line 4: add "the" before "plaintiff" Page 13, line 11: add "the" before "plaintiff" Page 13, line 13: add "the" before "plaintiff" Page 20, line 9-10: delete "acting President" and insert "then-acting president" Page 26, footnote 8: delete "include" and insert "were" Page 32, line 10: delete the "s" from "demonstrates" UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1050 THEODORE L. LeBLANC, Plaintiff, Appellant, v. GREAT AMERICAN INSURANCE COMPANY, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Walter M. Phillips, Jr., with whom Phillips and Phelan, ___________________________ ______________________ Sigmund J. Roos and Peabody & Brown were on brief for appellant. _______________ _______________ Kalvin M. Grove with whom Joel W. Rice and Fox and Grove, _________________ _____________ _______________ Chartered were on brief for appellee. _________ ____________________ September 29, 1993 ____________________ CAMPBELL, Senior Circuit Judge. On October 19, _____________________ 1990, the defendant-appellee, Great American Insurance Company ("Great American"), terminated its employment of the plaintiff-appellant, Theodore L. LeBlanc, who was then fifty- nine years old. LeBlanc brought this action in the district court against his former employer pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621- 634 (1985 & Supp. 1993), and Mass. Gen. L. ch. 151B, 4. The district court entered summary judgment in Great American's favor, and this appeal followed. We affirm. I. JURISDICTION JURISDICTION Great American contends that this court is without jurisdiction over LeBlanc's appeal from the district court's order granting summary judgment in its favor. To follow this argument, it is necessary to understand the procedural history of this case. The district court rendered its final judgment granting summary judgment to Great American on November 2, 1992. On November 10, LeBlanc moved for reconsideration under Fed. R. Civ. P. 59(e). On December 2, 1992, while this motion for reconsideration was still pending, LeBlanc filed a notice of appeal from the November 2, 1992, grant of summary judgment. Because at the time LeBlanc filed his notice of appeal the district court had not yet ruled on LeBlanc's -4- motion for reconsideration, we determined that we were without jurisdiction to consider the appeal and accordingly dismissed it. On December 21, 1992, the district court denied LeBlanc's motion for reconsideration. LeBlanc filed a second notice of appeal on December 28. The second notice of appeal asked for relief "from the Order entered December 21, 1992, denying Plaintiff's Motion for Reconsideration of the court's previously entered order of November 2, 1992, granting summary judgment in favor of defendant Great American Insurance Companies [sic]." Great American argues that LeBlanc's second notice of appeal, because it only challenges the district court's denial on December 21, 1992 of LeBlanc's Rule 59(e) motion, does not confer jurisdiction upon this court to entertain an appeal from the district court's judgment of November 2, 1992, granting summary judgment. Appellee insists we possess jurisdiction only to consider the narrower factors relevant to the district court's denial of LeBlanc's motion for reconsideration. We disagree. It is true that Fed. R. App. P. 3(c) states that "[t]he notice of appeal shall specify the . . . order or part thereof appealed from." Rule 3(c)'s "commands are jurisdictional and mandatory." Kotler v. American Tobacco ______ ________________ Co., 981 F.2d 7, 10-11 (1st Cir. 1992) (citing Smith v. ___ _____ Barry, ___ U.S. ___, 112 S. Ct. 678, 682, 116 L. Ed. 2d 678 _____ -5- (1992); Torres v. Oakland Scavenger Co., 487 U.S. 312, 315- ______ ______________________ 16, 108 S. Ct. 2405, 2407-08, 101 L. Ed. 2d 285 (1988)). Nevertheless, courts have been admonished to interpret Rule 3(c) liberally. Id.; see Foman v. Davis, 371 U.S. 178, 181- ___ ___ _____ _____ 82, 83 S. Ct. 227, 228-30, 9 L. Ed. 2d 222 (1962). In general, "an appeal from the denial of a Rule 59(e) motion is not an appeal from the underlying judgment." Mariani-Giron v. Acevedo-Ruiz, 945 F.2d 1, 3 (1st Cir. 1991) _____________ ____________ (citing Rodriguez-Antuna v. Chase Manhattan Bank Corp., 871 ________________ ___________________________ F.2d 1, 2-3 (1st Cir. 1989); Pagan v. American Airlines, _____ __________________ Inc., 534 F.2d 990, 992-93 (1st Cir. 1976)). Yet this rule ____ is not inflexible. This circuit has allowed a timely appeal from the denial of a timely Rule 59(e) motion to serve as notice of an appeal from the underlying judgment in cases where the appellant's intent to appeal from the judgment is clear. Id.; see Foman, 371 U.S. at 181-82. In making this ___ ___ _____ assessment, we consider the notice of appeal "in the context of the record as a whole." Kotler, 981 F.2d at 11. ______ Foman v. Davis involved facts very similar to those _____ _____ in this case. The district court had dismissed the complaint for failure to state a claim upon which relief could be granted. The next day, plaintiff moved to vacate the judgment, pursuant to Fed. R. Civ. P. 59(e), and also moved to amend the complaint. While the motions were still pending, plaintiff filed a notice of appeal from the district -6- court's dismissal of the complaint. Shortly thereafter, the district court denied the plaintiff's motions. The plaintiff then filed a second notice of appeal from the denial of the motions. Although the parties in Foman briefed and argued _____ the merits of the district court's dismissal of the complaint as well as the district court's denial of the plaintiff's motions, the court of appeals, of its own accord, dismissed the appeal insofar as it was taken from the district court's dismissal of the complaint. The court of appeals held that the second notice of appeal was "ineffective to review the . . . judgment dismissing the complaint because the notice failed to specify that the appeal was being taken from that judgment as well as from the orders denying the motions." Foman, 371 U.S. at 180-81. _____ In reversing the court of appeals, the Supreme Court held that "[t]he defect in the second notice of appeal did not mislead or prejudice the respondent." Id. at 181. ___ Although the Court agreed that the first premature notice of appeal had had no effect,1 it ruled that, "[t]aking the two notices and the appeal papers together, petitioner's intention to seek review of both the dismissal and the denial ____________________ 1. Similarly, the first notice of appeal in this case was without effect. See Fed. R. App. P. 4(a)(4)(iii) (stating ___ that a notice of appeal filed before the disposition of a motion under Rule 59 to alter or amend the judgment shall have no effect). -7- of the motions was manifest." Id. The Court found support ___ for this conclusion from the fact that both parties had briefed and argued the merits of the dismissal on appeal. The Court's decision in Foman seems to us to be _____ dispositive here. LeBlanc's intent to appeal from the district court's November 2, 1992, grant of summary judgment was plain. The two notices taken together revealed LeBlanc's desire to appeal not just from the motion for reconsideration but also from the underlying judgment. II. BACKGROUND BACKGROUND Great American is an all lines insurance company with its headquarters in Cincinnati, Ohio. As of October 1990, when Great American dismissed LeBlanc, Great American was divided into four geographical regions: Northeast, South, Midwest, and West. In addition to these geographical divisions, Great American was organized according to the lines of business, distinguishing between personal and commercial lines of insurance. At the time of his discharge, LeBlanc was employed by Great American Northeast, Inc. (the "Northeast Zone") in its commercial lines division. Great American hired LeBlanc in October 1980 as a branch manager in its Wheaton, Maryland, office. At that time, LeBlanc was forty-nine years old. From 1980 through 1988, LeBlanc worked for Great American in Maryland. In -8- January 1989, Great American transferred the fifty-seven- year-old LeBlanc, with his consent, to eastern Massachusetts to serve as a commercial lines Agency Operations Representative ("AOR"). The transfer was approved by Al Conte, then-acting president of the Northeast Zone, who also agreed to pay for LeBlanc's moving expenses and to give him a sixteen percent pay raise. In his capacity as an AOR, LeBlanc was expected to market Great American commercial insurance to independent agents or brokers in eastern Massachusetts and assist those agents and brokers who were already selling Great American's insurance products. When LeBlanc started in eastern Massachusetts, he joined Charles DeMartino, then fifty-six years old, as one of two AORs marketing Great American commercial lines insurance in eastern Massachusetts. LeBlanc and DeMartino worked together in eastern Massachusetts until LeBlanc's discharge. According to Great American's evidence, which is not contradicted, the decision to dismiss LeBlanc had its genesis in August 1990, when Conte began to prepare a budget for the upcoming year for the Northeast Zone. Because the Northeast Zone was experiencing financial problems at the time, Thomas Hayes, Executive Vice-President of Great American, instructed Conte to submit a leaner budget to corporate headquarters. Although Conte sought ways to reduce -9- expenses without dismissing personnel, he concluded, in September and early October 1990, that personnel cuts would have to be made. Conte decided, with the approval of Hayes and Human Resources personnel in Cincinnati, to eliminate or leave vacant five positions in the Northeast Zone. Those people directly affected by Conte's decision included LeBlanc, William St. George, a forty-seven-year-old underwriter working in the Windsor, Connecticut, headquarters of the Northeast Zone, and Dwight Bowie, the thirty-eight-year-old Profit Center Manager in Hartford, Connecticut. In addition, two other vacant positions in the Northeast Zone were eliminated. They included the AOR Manager in the Syracuse, New York, office, a position that had already been vacated by the resignation of Tim Johnson, age twenty-six, and an underwriting position in Hartford, Connecticut, that had been vacant for some time. On October 19, 1990, Great American informed LeBlanc that he was being dismissed. LeBlanc was told that the decision to eliminate his position was based on budget constraints, and not because of his age or his individual performance. Immediately after LeBlanc's discharge, DeMartino, the remaining AOR in eastern Massachusetts, who was then fifty-seven, assumed responsibility for four or five of the approximately fifteen insurance agents whom LeBlanc -10- had serviced. The remaining agents were assigned to underwriters in Great American's Lancaster, Pennsylvania, office, which was responsible for underwriting insurance in eastern Massachusetts. Approximately nine months later, in July of 1991, Great American decided to transfer underwriting responsibility for eastern Massachusetts from the Lancaster office to the Windsor, Connecticut, office. At that time, Anne Daley, a thirty-year-old AOR from the Windsor, Connecticut, office, began to service agents in eastern Massachusetts. Daley, who had been hired by Great American prior to LeBlanc's discharge, and who had previously serviced agents in Connecticut and western Massachusetts, dropped her Connecticut agents to service the eastern Massachusetts agents, but continued to service agents in western Massachusetts. From July through September 1991, Daley serviced some of LeBlanc's former eastern Massachusetts agents. Daley left Great American in September 1991. Since that time, DeMartino has been the only Great American AOR servicing agents in eastern Massachusetts. III. DISCUSSION DISCUSSION A. Summary Judgment ________________ Because our review of a grant of summary judgment is de novo, we, like the district court, are obliged to ________ -11- review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor. Mesnick v. General Elec. Co., 950 _______ __________________ F.2d 816, 820 (1st Cir. 1991), cert. denied, ___ U.S. ___, ____________ 112 S. Ct. 2965, 119 L. Ed. 2d 586 (1992); Griggs-Ryan v. ___________ Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment _____ is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, ___ _______ ___________________________ 1116 (1st Cir. 1993); Lawrence v. Northrop Corp., 980 F.2d ________ ______________ 66, 68 (1st Cir. 1992). Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties. Initially, the onus falls upon the moving party to aver "`an absence of evidence to support the nonmoving party's case.'" Garside v. Osco Drug, Inc., 895 F.2d 46, 48 _______ _______________ (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. _____________ _______ 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). Once the moving party satisfies this requirement, the pendulum swings back to the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." Anderson v. Liberty Lobby, Inc., ________ ___________________ -12- 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986) (citing Fed. R. Civ. P. 56(e)); see Goldman, 985 F.2d ___ _______ at 1116; Lawrence, 980 F.2d at 68; Garside, 895 F.2d at 48 ________ _______ ("[A] `genuine issue' exists if there is `sufficient evidence supporting the claimed factual dispute' to require a choice between `the parties' differing versions of the truth at trial.'" (quoting Hahn v. Sargent, 523 F.2d 461, 464 (1st ____ _______ Cir. 1975), cert. denied, 425 U.S. 904, 96 S. Ct. 1495, 47 L. ____________ Ed. 2d 754 (1976))). To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denials of his pleading." Anderson, 477 U.S. at 256. Moreover, the ________ evidence presented by the nonmoving party "`cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.'" Mesnick, 950 _______ F.2d at 822 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 ____ __________________________ F.2d 179, 181 (1st Cir. 1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. ____________ R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). __________________________ Thus, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a -13- finding favorable to the nonmoving party." Goldman, 985 F.2d _______ at 1116 (citing Anderson, 477 U.S. at 249). ________ -14- B. The Age Discrimination Claims2 _____________________________ 1. The Legal Framework In an ADEA discrimination lawsuit, the plaintiff bears the ultimate "`burden of proving that his years were the determinative factor in his discharge, that is, that he would not have been fired but for his age.'" Mesnick, 950 _______ F.2d at 823 (quoting Freeman v. Package Mach. Co., 865 F.2d _______ _________________ 1331, 1335 (1st Cir. 1988)). At least when there is little overt evidence of age discrimination, the case usually follows the ritualized burden-shifting paradigm in McDonnell _________ Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S. Ct. 1817, _____________ _____ 1824-26, 36 L. Ed. 2d 668 (1973); see, e.g., Goldman v. First ___ ____ _______ _____ Nat'l Bank of Boston, 985 F.2d 1113 (1st Cir. 1993); Lawrence ____________________ ________ v. Northrop Corp., 980 F.2d 66 (1st Cir. 1992); Mesnick v. ______________ _______ General Elec. Co., 950 F.2d 816 (1st Cir. 1991), cert. __________________ _____ denied, ___ U.S. ___, 112 S. Ct. 2965, 119 L. Ed. 2d 586 ______ (1992). Under this formulation, a plaintiff opens with a prima facie showing of certain standardized elements suggestive of possible discrimination. McDonnell Douglas, _________________ 411 U.S. at 802; Goldman, 985 F.2d at 1117; Lawrence, 980 _______ ________ F.2d at 69; Mesnick, 950 F.2d at 823. _______ ____________________ 2. LeBlanc does not specifically argue that the district court erred in granting summary judgment for Great American under the Massachusetts Anti-Discrimination Act, Mass. Gen. L. ch. 151B, 4 (1982 & Supp. 1988). -15- The elements of the prescribed prima facie case vary, within the age discrimination context, depending upon whether or not the plaintiff was dismissed as part of a reduction in force. If there was no reduction in force, the plaintiff establishes the prima facie case by demonstrating that he "(1) was at least forty years of age, (2) met the employer's legitimate job performance expectations, (3) experienced adverse employment action, and (4) was replaced by a person with roughly equivalent job qualifications." Goldman, 985 F.2d at 1117; see Mesnick, 950 F.2d at 823. But _______ ___ _______ if the job loss was part of a reduction in force, the plaintiff need not show replacement by someone with equivalent job qualifications. Instead, to satisfy element (4), the plaintiff may demonstrate either that "the employer did not treat age neutrally or that younger persons were retained in the same position." Hebert v. Mohawk Rubber Co., ______ _________________ 872 F.2d 1104, 1111 (1st Cir. 1989), quoted in Goldman, 985 _________ _______ F.2d at 1117; Lawrence, 980 F.2d at 69; Connell v. Bank of ________ _______ ________ Boston, 924 F.2d 1169, 1173 n.5 (1st Cir.), cert. denied, ___ ______ ____________ U.S. ___, 111 S. Ct. 2828, 115 L. Ed. 2d 997 (1991). Establishment of the prescribed prima facie case creates a presumption that the employer engaged in impermissible age discrimination. See, e.g., Texas Dep't of ___ ____ ______________ Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. _________________ _______ 1089, 1094, 67 L. Ed. 2d 207 (1981); Goldman, 985 F.2d at _______ -16- 1117. However, to rebut this presumption, the employer need only "articulate a legitimate nondiscriminatory reason for __________ the employee's termination." [Emphasis supplied.] Lawrence, ________ 980 F.2d at 69 (citations omitted). The employer's obligation is simply one of production. "[T]he burden of persuasion remains [the employee's] at all times." Id. ___ (citing Mesnick, 950 F.2d at 823). _______ Courts have commonly said that once the employer has proffered a legitimate, nondiscriminatory reason for its adverse employment decision, the presumption generated by the employee's prima facie case disappears, and the burden falls back upon the employee to prove that the reason advanced by the employer for the adverse employment action constituted a mere pretext for unlawful age discrimination. See, e.g., ___ ____ Goldman, 985 F.2d at 1117; Lawrence, 980 F.2d at 69; Mesnick, _______ ________ _______ 950 F.2d at 823-24. In this circuit, we have always required not only "minimally sufficient evidence of pretext," but evidence that overall reasonably supports a finding of discriminatory animus. Goldman, 985 F.2d at 1117; Lawrence, _______ ________ 980 F.2d at 69-70 (citing Mesnick, 950 F.2d at 825; _______ Villanueva v. Wellesley College, 930 F.2d 124, 127 (1st __________ _________________ Cir.), cert. denied, ___ U.S. ___, 112 S. Ct. 181, 116 L. Ed. ____________ 2d 143 (1991); Connell, 924 F.2d at 1172; Medina-Munoz, 896 _______ ____________ F.2d at 9; Olivera v. Nestle P.R., Inc., 922 F.2d 43, 48 (1st _______ _________________ Cir. 1990)). -17- This approach and particularly the latter aspect, adopted in some but not all circuits was clarified by the Supreme Court last term. The Court held that, once the employer succeeds "in carrying its burden of production, the McDonnell Douglas framework with its presumptions and _________________ burdens is no longer relevant." St. Mary's Honor Ct. v. _____________________ Hicks, ___ U.S. ___, 113 S. Ct. 2742, 2749, ___ L. Ed.2d ___ _____ (1993). According to the Court: The presumption [raised by the plaintiff's prima facie case], having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture . . . . The defendant's "production" (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether [the] plaintiff has proven "that the defendant intentionally discriminated against [him]" because of his race . . . . The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will permit the trier of fact to infer the ______ ultimate fact of intentional discrimination . . . . ___ U.S. ___, 113 S. Ct. at 2749 (citations omitted). Although the Hicks case arose in the context of a race _____ discrimination claim brought pursuant to Title VII of the Civil Rights Act of 1964, the Court's decision seems equally applicableto agediscrimination lawsuitsbrought underthe ADEA. -18- Thus, in an age discrimination case, once the employer articulates a legitimate, nondiscriminatory reason for its decision to discharge the employee, the McDonnell _________ Douglas presumption "drops out of the picture." Hicks, ___ _______ _____ U.S. ___, 113 S. Ct. at 2749. The trier of fact must then simply determine, based on all the evidence, whether the employer's decision to terminate the plaintiff was motivated by intentional age discrimination. Id. In reaching this ___ decision, the trier of fact may consider, along with other evidence, the evidence put forward to show that the employer's justification for its adverse employment action was a pretext. Id. Such evidence, coupled with the elements ___ of the employee's prima facie case (and, of course, any other evidence), may (or may not) lead the factfinder to infer that the employer has engaged in intentional discrimination. Id. ___ The Hicks decision emanated from an appeal from a _____ full bench trial. In the context of a summary judgment proceeding, Hicks requires that, once the employer has _____ advanced a legitimate, nondiscriminatory basis for its adverse employment decision, the plaintiff, before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him or her was wrongfully based on age. Goldman, 985 F.2d at 1117; _______ Lawrence, 980 F.2d at 69-70; Villanueva, 930 F.2d at 127-28; ________ __________ -19- Connell, 924 F.2d at 1172. "Direct or indirect evidence of _______ discriminatory motive may do, but `the evidence as a whole . . . must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus.'" Goldman, 985 F.2d at 1117 (quoting Connell, 924 F.2d at 1172 _______ _______ n.3). Thus, the plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer. See id. at 1118 (citations and footnote omitted). ___ ___ 2. The Prima Facie Case The district court granted summary judgment in Great American's favor on the initial ground that LeBlanc had failed to make out a prima facie case of age discrimination. While it is not clear to us that the court erred in this regard, we prefer because the question is so close to assume for present purposes that LeBlanc did establish a prima facie case within the McDonnell Douglas formulation. _________________ This leads us, infra, to examine the adequacy of the evidence _____ of discriminatory animus, concluding, as we do, that it is insufficient to create a triable issue. There is no direct evidence that Great American discharged LeBlanc because of his age, and the parties agree that LeBlanc satisfies the first three of the four elements -20- of his prima facie case under the McDonnell Douglas __________________ paradigm.3 What is disputed is whether LeBlanc has established the fourth element of his prima facie case. Great American argues that, because this is a reduction in force case, LeBlanc must demonstrate and has failed to do so that Great American either failed to treat age neutrally in making its decision to terminate him or retained younger persons in the same position that he held.4 LeBlanc maintains that Great American did not treat age neutrally and that it retained younger employees in the same position that he held because, when Great American discharged him in October 1990, it continued to employ thirty other younger AORs in the Northeast Zone. Moreover, LeBlanc intimates that Great American failed to treat age neutrally because two of the three people whom Great American actually discharged as part of its reduction in force, including LeBlanc, were members of the protected class, i.e., were ____________________ 3. At the time of his discharge, LeBlanc was fifty-nine years of age. This satisfies the first element of the McDonnell Douglas standard, which, in age cases, requires the _________________ plaintiff to be over the age of forty. In addition, LeBlanc was meeting Great American's job performance expectations. Finally, LeBlanc experienced adverse employment action, having been discharged. 4. LeBlanc does not agree that this is a reduction in force case. He claims that Great American's characterization of this case as such is merely a pretext for Great American's discriminatory conduct. Nevertheless, even assuming a reduction in force occurred, LeBlanc contends that he has made out a prima facie case. -21- forty or older. We are not convinced that the AOR positions held by the thirty other AORs elsewhere in the region may properly be considered the "same" position LeBlanc held. While we agree that the other AOR position in eastern Massachusetts, which continued to be held by DeMartino (a man almost identical in age to LeBlanc), was the "same" position, we are less clear that other AOR positions scattered around the region say, in Syracuse, New York were the same. Cf. Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir.) __ ______ ____________ (retention of younger people in other jobs which plaintiff was qualified to perform not sufficient to establish a prima facie case), cert. denied, 498 U.S. 878, 111 S. Ct. 211, 112 ____________ L. Ed 2d 171 (1990). We also question whether a company can be said not to treat age neutrally as a matter of law merely because two of the three people it discharges pursuant to a reduction in force belong to the protected class. A sample of three is a small number from which to draw deductions of this sort. Still, we shall assume, without deciding, that these two facts taken together would satisfy the fourth element of the McDonnell Douglas test, bearing in mind the __________________ Court's admonition that "[t]he burden of making out a prima facie case is `not onerous.'" Mesnick, 950 F.2d at 823 _______ (quoting Texas Dep't of Community Affairs v. Burdine, 450 __________________________________ _______ U.S. at 253). 3. Great American's Justification -22- Assuming, without necessarily finding, that LeBlanc has established a prima facie case of age discrimination, we turn next to the second prong of the McDonnell Douglas test. This _________________ calls for determining whether Great American has articulated a legitimate, nondiscriminatory reason for LeBlanc's dismissal. We hold that it plainly has. Great American maintains that it reduced its force in the Northeast Zone in October 1990 because the region was experiencing financial difficulties. Al Conte, then-acting president of the Northeast Zone, stated in an affidavit that the financial difficulties in the Northeast Zone were attributable to a downturn in the region's economy, high fixed expenses, and state-mandated residual assessments, or government pooling requirements, levied against commercial lines of insurance.5 Great American asserts that it discharged LeBlanc as part of this economically-driven reduction in force for a number of interrelated business reasons. Conte, who actually made the decision to eliminate LeBlanc's position, stated that he looked to eliminate this Massachusetts position because Massachusetts was the least profitable state in the ____________________ 5. These pooling requirements were charges assessed by state governments against insurance companies in certain lines of insurance intended to fund otherwise uninsurable business. These charges were based upon each insurer's pro rata percentage of total premiums written in that state for a given line of insurance. -23- Northeast Zone. In addition, eastern Massachusetts, an extremely small geographic area, was being serviced by two experienced AORs, LeBlanc and DeMartino. Conte believed that eastern Massachusetts would be the least harmed of the Northeast Zone regions by the elimination of a full-time AOR position. Finally, Conte chose to retain DeMartino, then fifty-eight years old (a year younger than LeBlanc), because DeMartino had a longer tenure in Massachusetts and had a claims adjusting background, not possessed by LeBlanc, that provided Great American with greater versatility in the event of hurricanes, storms, or floods. The explanations for LeBlanc's discharge offered by Conte fully satisfy Great American's burden of production under the second prong of the McDonnell Douglas test. It has _________________ presented, "`through the introduction of admissible evidence,' reasons for its actions which, if believed by the __________________ trier of fact, would support a finding that unlawful _______________ discrimination was not the cause of the employment action." St. Mary's Honor Ctr. v. Hicks, ___ U.S. ___, 113 S. Ct. at ______________________ _____ 2747 (quoting Burdine, 450 U.S. at 254-55) (emphasis in _______ original). Accordingly, the presumption of age discrimination raised by LeBlanc's prima facie case has vanished. Left to be decided is whether the evidence, in its entirety, would permit a reasonable factfinder to infer that -24- Great American's decision to terminate LeBlanc was inspired by age animus. 4. LeBlanc's Evidence of Age Animus LeBlanc points to two types of circumstantial evidence as supporting an inference that Great American's decision to terminate him was motivated by intentional age discrimination. First, LeBlanc contends that the reasons articulated by Great American for his dismissal could be found to be mere pretexts offered to disguise the defendant's age animus. Second, LeBlanc argues that certain statistical evidence he presented suffices to show that Great American was engaging in a pattern of discriminatory conduct towards older employees. a. Evidence of Pretext LeBlanc submits that a layoff of only three employees out of 212 salaried, exempt employees in the Northeast Zone cannot be characterized as a bona fide reduction in force.6 Moreover, he claims that Great American did not engage in a reduction in force because it hired ten new AORs in 1990 prior to his dismissal. We conclude, however, that a reasonable factfinder could not infer pretext or age discrimination from these circumstances. ____________________ 6. Although LeBlanc fails to spell out the specific characteristics of a reduction in force as he understands the term, he insists that a true reduction in force occurs, for instance, when 1,000 employees out of an employee population of 5,500 are dismissed. -25- An employer need not dismiss any particular number of employees, or terminate a set percentage of the work force, to institute a reduction in force. Rather, "[a] work force reduction situation occurs when business considerations _______________________ cause an employer to eliminate one or more positions within _____________________________________________________________ the company." Barnes v. GenCorp Inc., 896 F.2d at 1465 ____________ ______ _____________ (emphasis added). According to Al Conte, Great American's corporate headquarters ordered him to submit a leaner budget for the Northeast Zone for the upcoming year because it was concerned about the region's financial difficulties. To comply, Conte decided that it would be necessary to eliminate five positions, two of which were unfilled at the time. Under these circumstances, the fact that Conte laid off only three employees, including LeBlanc, as part of his claimed initiative to trim expenses does not by itself suggest that the dismissals were mere pretexts rather than bona fide reductions in force. Other evidence would be needed from which to conclude that Great American's stated reasons were mendacious. Nor could a rational factfinder conclude that Great American's purported reduction in force was a pretext for age discrimination simply because it hired ten younger AORs elsewhere in the Northeast Zone in the period before discharging LeBlanc in October 1990. LeBlanc provides no evidence that the hiring of younger AORs outside of eastern -26- Massachusetts was tied in any way to Great American's decision to eliminate the older LeBlanc's position in eastern Massachusetts; nothing suggests they were hired to assume LeBlanc's responsibilities. LeBlanc submits that a reasonable juror might conclude that a company as sophisticated as Great American would not legitimately decide to engage in a reduction in force shortly after adding ten new positions. But to reach any such conclusion on this record, a juror would have to indulge impermissibly in unsupported speculation. See Medina-Munoz, 896 F.2d at 8. ___ ____________ One can imagine perfectly legitimate considerations for increasing the number of AORs elsewhere in the region while cutting back in eastern Massachusetts. It is not a court's role "to second-guess the business decisions of an employer." Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 31 (1st _______ ____________________________ Cir. 1990). LeBlanc also claims that he was not dismissed pursuant to a reduction in force because he was replaced by Anne Daley. It is true that "[a]n employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." Barnes, 896 F.2d at 1457. ______ Nonetheless, Daley did not, in fact, replace LeBlanc. A discharged employee "is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other -27- existing employees already performing related work." Id. ___ Rather, "[a] person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." Id. ___ Daley was not hired to perform LeBlanc's duties. She began working for Great American in its Windsor, Connecticut, office one month before LeBlanc was discharged, and did not begin to service agents and brokers in eastern Massachusetts until July 1991, approximately nine months after LeBlanc's departure. Prior to then, she serviced agents only in Connecticut and western Massachusetts. Even in July 1991, and thereafter, Daley did not perform anything like all of LeBlanc's former duties. Moreover, while assigned to some (though not all) of LeBlanc's former agents in eastern Massachusetts, she continued to service agents in western Massachusetts. Thus, at most, her temporary assignment included performing some of LeBlanc's prior responsibilities while carrying on duties of her own never performed by him. And even this partial performance of LeBlanc's duties lasted for only three months. This did not amount to replacing him.7 LeBlanc next disputes Great American's claim that it was experiencing financial difficulties in the Northeast Zone and in Massachusetts in 1990. LeBlanc opines that the ____________________ 7. Since September 1991, when Daley resigned from Great American, Charles DeMartino has been the only AOR in eastern Massachusetts. -28- primary method for determining whether a particular state or a branch office is profitable is by comparing what is referred to as the total benchmark figure ("TBM") with the total loss ratio ("TOT"). According to LeBlanc, when the TBM figure exceeds the TOT figure, it reflects profitability. LeBlanc asserts that Great American's Gross Accident Year Analysis Report ("GAYAR") showed that, for the years 1987 through 1991, Massachusetts was the only state among the four largest producing states in the Northeast Zone8 consistently to have a TBM figure that exceeded its TOT figure. The GAYAR, however, was only one of many records kept by Great American that measured the company's profitability in the Northeast Zone and in Massachusetts. The Effective Accident Year Report for Massachusetts, for instance, revealed that, in 1990, the TOT figure exceeded the TBM figure fifty to forty-three.9 This was a strong indication of unprofitability in Massachusetts. In addition, the profit and loss statements for the various offices in the Northeast Zone revealed that the region was experiencing ____________________ 8. The other three states were New York, New Jersey, and Connecticut. 9. The difference between the GAYAR and the Effective Accident Year Report is that the former measured loss ratios on a policy year/accident year basis while the latter measured loss ratios on a calendar year basis. According to Robert McGuigan, who was a vice-president for Great American at the time of LeBlanc's discharge, executives would evaluate the calendar year loss ratios, not the policy year/accident year loss ratios, to assess profitability. -29- financial difficulties in 1990. For instance, the Lancaster branch office, to which the eastern Massachusetts region reported, showed a calendar year underwriting loss in 1990 of approximately $3.7 million; the New Jersey profit center reported a calendar year underwriting loss in 1990 of roughly $4.5 million; and the New England profit center suffered a calendar year underwriting loss in 1990 of approximately $3.8 million. All told, the Northeast Zone incurred a calendar year underwriting loss in 1990 of $11.8 million.10 Given this evidence of substantial financial difficulty, we can find no triable issue over Great American's assertion that unprofitability concerns fueled its decision to lay off LeBlanc and the others. The question for a jury would not be whether Great American's finances, viewed by one yardstick, might arguably be seen by someone else in a more optimistic light than did its managers, but whether there was evidence of profitable performance sufficient to permit a reasonable jury to infer that Great American's proffered pessimistic analysis given as a reason for the layoffs was a mere pretense. Viewing all the financial evidence together, including the GAYAR data, we think a jury would lack any rational basis from this evidence to conclude ____________________ 10. This loss appears to be particularly severe when compared to the $111 thousand calendar year underwriting profit that the Northeast Zone realized in 1989. -30- that Great American's assertions of financial concern, as a basis for the discharges, were a sham. Finally, LeBlanc argues that further evidence of the pretextual nature of Great American's explanation for terminating LeBlanc lies in the fact that Al Conte did not consult with Bruce Rutherford, the branch manager of the Lancaster office and the person to whom LeBlanc reported, before he made the final decision to dismiss LeBlanc. In addition, LeBlanc asserts that Joseph Klimas, the vice- president in charge of personnel for the Northeast Zone, did not learn about LeBlanc's impending dismissal until one week before it was officially announced. Although Conte might have been well served to consult these people before he decided to discharge LeBlanc, we are not persuaded that this evidence either undermines the justifications given by Great American for its decision to dismiss LeBlanc or shows that Great American or Conte was motivated by age animus. As we stated in Mesnick v. General Electric Co., "Courts may not _______ _____________________ sit as super personnel departments, assessing the merits or even the rationality of employers' nondiscriminatory business decisions." 950 F.2d at 825. LeBlanc points to nothing in the record to suggest why Conte, who, in January 1989, approved LeBlanc's transfer, at Great American's expense, to eastern Massachusetts and his corresponding sixteen percent pay raise, would develop an aversion to older -31- people less than two years later, especially where he chose to retain DeMartino, the other AOR in eastern Massachusetts, who was only a year younger than the fifty-nine-year-old LeBlanc. See Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, ___ ____ _______________________ 175 (8th Cir. 1992); Proud v. Stone, 945 F.2d 796, 797 (4th _____ _____ Cir. 1991) ("[I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer."). We note that Conte, himself, was nearly sixty years old when he decided to terminate LeBlanc and the others. b. Statistical Evidence LeBlanc offers statistical evidence of Great American's employment practices that he claims would allow a reasonable trier of fact to infer that Great American's decision to terminate him constituted an act of illegal age discrimination. The district court, however, found otherwise. It ruled that, in light of the totality of the record, LeBlanc's statistical evidence was insufficient as a matter of law to demonstrate that Great American wrongfully considered age in its decision to dismiss LeBlanc. We agree with the district court. -32- In a disparate treatment case such as LeBlanc's,11 the central focus "is less whether a pattern of discrimination existed [at the company] and more how a particular individual was treated, and why." Cumpiano v. ________ Banco Santander P.R., 902 F.2d 148, 156 (1st Cir. 1990). As ____________________ such, statistical evidence of a company's general hiring patterns, although relevant, carries less probative weight than it does in a disparate impact case.12 See id.; Mack ___ ___ ____ v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 184 n.3 (1st Cir. _________________________ 1989) (questioning how statistics showing a low percentage of African Americans and women at A & P would have been admissible in a disparate treatment case). In this context, statistical evidence in a disparate treatment case, in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee. See Walther v. Lone Star Gas Co., 977 ___ _______ __________________ F.2d 161, 162 (5th Cir. 1992). This is because a company's overall employment statistics will, in at least many cases, have little direct bearing on the specific intentions of the ____________________ 11. A "disparate treatment" cause of action accrues "when an employer treats an employee less favorably than others because of her race, color, religion, sex, [] national origin," or age. Cumpiano v. Banco Santander P.R., 902 F.2d ________ ____________________ 148, 156 (1st Cir. 1990). 12. Disparate impact actions arise "from employment practices, often facially neutral, which (1) cannot be justified by business necessity and (2) in fact impose harsher burdens on employees who share a protected characteristic." Cumpiano, 902 F.2d at 156. ________ -33- employer when dismissing a particular individual. Gadson v. ______ Concord Hosp., 966 F.2d 32, 35 (1st Cir. 1992). "Without an _____________ indication of a connection between the statistics," the practices of the employer, and the employee's case, statistics alone are likely to be inadequate to show that the employer's decision to discharge the employee was impermissibly based on age. Id. ___ In the instant case, we do not think that LeBlanc's statistical evidence would allow a reasonable trier of fact to infer that Great American engaged in illegal age discrimination against LeBlanc. The statistics themselves are of questionable import, and they stand precariously unsupported by other probative evidence of age discrimination. There is, moreover, no evidence whatsoever to connect the statistics to Great American's specific decision to dismiss LeBlanc. The flaws in the statistical evidence itself are notable. First, the comparison of LeBlanc's age with the distribution of ages in various groups of AORs in the Northeast Zone from 1989 through 1991 fails to provide important information regarding the pool of applicants. We are not told whether "qualified older employees were available or applied for those jobs." Simpson v. Midland- _______ ________ Ross Corp., 823 F.2d 937, 943 (6th Cir. 1987). Indeed, the __________ fact that recently hired AORs are younger than LeBlanc is not -34- necessarily evidence of discriminatory intent, but may simply reflect a younger available work force. Second, LeBlanc's statistics that compare the ages of the employees who left Great American for any reason from 1989 through 1991 with the ages of Great American employees who kept their jobs during the period fail to distinguish voluntary from involuntary departures. Voluntary departures obviously have no bearing on whether Great American engaged in age discrimination. See id. (improper to include "all who ___ ___ left the company during the relevant period even though they might have retired . . . or accepted jobs elsewhere"). In addition, of the twenty-two people who left Great American either voluntarily or involuntarily during the three-year period, seventeen left in 1991, the year following LeBlanc's dismissal. Significantly, the average age of those seventeen people was actually younger than the average age of the employees who stayed with Great American.13 We cannot see how the data from 1991 demonstrate any pattern of age discrimination whatsoever. Accordingly, if we disregard the data from 1991, LeBlanc's statistics are based on the departure of only five employees, including LeBlanc, over two ____________________ 13. Even when the 1990 hires and the trainees, who are presumably younger in age than other employees, are excluded from the employee pool during the three-year period, the statistical comparisons between jobs that were eliminated and jobs that were not eliminated in 1991 do not raise an inference of age discrimination. -35- years from an average annual employee population in the Northeast Zone of approximately 215 people. "[S]uch a small statistical sample carries little or no probative force to show discrimination." Fallis v. Kerr-McGee Corp., 944 F.2d ______ _________________ 743, 746 (10th Cir. 1991); see Simpson v. Midland-Ross Corp., ___ _______ __________________ 823 F.2d 937, 943 (6th Cir. 1987); Sengupta v. Morrison- ________ _________ Knudsen Co., 804 F.2d 1072, 1075-76 (9th Cir. 1986); Coates ____________ ______ v. Johnson & Johnson, 756 F.2d 524, 541 (7th Cir. 1985); __________________ Haskell v. Kaman Corp., 743 F.2d 113, 121 (2d Cir. 1984). We _______ ___________ conclude that LeBlanc's statistical evidence does not provide a sufficient basis for a reasonable jury to find that Great American terminated LeBlanc because of his age. IV. CONCLUSION CONCLUSION On the record before us, we find that LeBlanc has adduced insufficient evidence for a reasonable trier of fact to infer that Great American's decision to terminate his employment in October 1990 was motivated by age animus. In other words, "[t]he evidence presented by [LeBlanc], viewed in the light most favorable to him, [fails] to create a genuine issue of material fact as to whether `but for his employer's motive to discriminate against him because of his age, [LeBlanc] would not have been discharged.'" Menard v. ______ First Sec. Servs. Corp., 848 F.2d 281, 289 (1st Cir. 1988) ________________________ (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1019 (1st Cir. ____ _______ _____ -36- 1979)). Indeed, LeBlanc's arguments are based largely upon conclusory allegations, improbable inferences, and unsupported speculation. The district court's decision to enter summary judgment in Great American's favor was proper. Affirmed. Costs to appellees. ________ __________________ -37-