USCA1 Opinion

 

 January 24, 1995 [Not for Publication] [Not for Publication] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 94-1677 ROBERTA J. RANDALL, Plaintiff, Appellant, v. SCOTT PAPER COMPANY AND S.D. WARREN COMPANY, Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Robert S. Hark with whom Isaacson & Raymond, P.A. was on brief _______________ _________________________ for appellant. B. Simeon Goldstein with whom Pierce, Atwood, Scribner, Allen, ____________________ __________________________________ Smith & Lancaster was on brief for appellees. _________________ ____________________ ____________________ Per Curiam. Plaintiff Roberta Randall asserts that Per Curiam. ___ ______ the district court erroneously ruled that statements contained in two affidavits were inadmissible hearsay and, as a consequence of that ruling, improperly granted summary judgment for defendants Scott Paper Co. and its subsidiary S.D. Warren Co.1 on Randall's retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000- e(3)(a). Because we conclude that even if the statements in question were admissible there would still be no genuine issue of material fact, we affirm. From 1980 to 1991, Randall worked as an environmental technician at Scott's mill in Westbrook, Maine. After she was laid off, either due to a mill-wide downsizing, as Scott claimed, or due to gender discrimination, as Randall claimed, Randall filed a complaint with the Maine Human Rights Commission (MHRC) and with the Equal Employment Opportunity Commission (EEOC) in September 1991. Meanwhile, Randall obtained other employment, working first for Betz Industrial from February 1991 until December 1991, when she was fired for performance reasons, and then for Northeast  ____________________ 1. Because it is not always clear from the record which facilities or actions relevant to this litigation are owned by or attributable to which defendant, and because the parties treat any such distinctions as unimportant, we will henceforth refer to either or both defendants simply as "Scott," even if actual ownership of a particular facility or responsibility for a particular action in reality rests with S.D. Warren or with both defendants. -2- 2 Test Consultants (NTC) beginning in August 1992. Both companies provide environmental testing services to Scott as well as to other companies. Randall's work for Betz included considerable time spent at Scott's mill in Hinckley, Maine. Although 15% of NTC's business derived from Scott, NTC sent Randall to perform work at Scott facilities on only one or two occasions. After both the MHRC and the EEOC declined to take action against Scott, Randall filed a sex discrimination lawsuit against Scott and S.D. Warren in June 1993. In January 1994, one day after she was deposed in connection with her lawsuit, NTC laid Randall off and has not rehired her. Randall's allegation relevant to this appeal is that Scott retaliated against her for pursuing her sex discrimination claim, thus violating 42 U.S.C. 2000- e(3)(a),2 by ordering NTC to keep her away from Scott  ____________________ 2. Section 2000-e(3)(a) provides in pertinent part: It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. -3- 3 facilities and, ultimately, to dismiss her.3 The defendants moved for summary judgment, asserting, inter alia, that there _____ ____ is no genuine issue of material fact because there is no evidence linking Scott to NTC's decision to dismiss Randall. In response to the defendants' motion, Randall points to: (1) the temporal proximity of her dismissal and her deposition testimony; (2) the importance of Scott as a customer to NTC, accounting for approximately 15% of NTC's business; (3) the fact that she was sent to Scott facilities only once or twice during her sixteen months at NTC; (4) a contract between NTC and Scott (the "Service Agreement") in which Scott retains the right to reject any NTC employees sent to perform work at Scott facilities; (5) her favorable performance evaluation at NTC relative to another laid-off employee who was subsequently rehired; and (6) statements allegedly made by Randall's supervisor at NTC, James Guzelian, which Randall claims strongly support the inference that Scott was behind her dismissal. We review a grant of summary judgment de novo, __ ____ drawing all reasonable inferences in favor of the nonmovant.  ____________________ 3. Thus, Randall essentially claims that Scott "blacklisted" her with NTC's cooperation. Scott does not argue that a blacklisting claim against a former employer is not actionable under 42 U.S.C. 2000e-3(a). See, e.g., ___ ____ Rutherford v. American Bank of Commerce, 565 F.2d 1162, 1163- __________ _________________________ 65 (10th Cir. 1977) (holding that former employer's negative reference because of Title VII lawsuit constituted actionable retaliation under 2000e-3(a)). -4- 4 LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. _______ ___________________ 1993), cert. denied, 114 S. Ct. 1398 (1994). Summary _____ ______ judgment is appropriate only when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When the nonmovant bears the burden of persuasion at trial, however, she can avoid summary judgment against her only if she makes a showing sufficient to establish the existence of each essential element to her case. Celotex Corp. v. ______________ Catrett, 477 U.S. 317, 322-23 (1986). Thus, to get to trial, _______ the burden-bearing nonmovant must adduce enough competent evidence to enable a reasonable jury to find for her on each element essential to her claim. See LeBlanc, 6 F.3d at 842. ___ _______ The alleged Guzelian statements are contained in two affidavits: Randall's and that of Ann Peoples, a former Scott employee. Randall states in her affidavit: (1) About a month after she started working for NTC, Guzelian told her that he had heard about her complaint against Scott, that "someone" in Scott's purchasing department had mentioned it to him but had told him that it should not be a problem. (2) When Randall asked Guzelian when she was going to be sent to do work at S.D. Warren facilities, "[h]e told me that Rick LaCouture (another NTC employee) had heard that I wasn't welcome at S.D. Warren, so he was going to . . . see if he -5- 5 could find out anything about what Rick had said." (3) On another occasion, Guzelian told Randall that "he had been told" by a safety supervisor at a Scott facility that "someone had noticed" Randall's name and that "someone thought that it was o.k." for her to work at certain Scott facilities but not at others located too near to the Westbrook facility where Randall had once worked. Guzelian also asked Randall during this conversation if she "wouldn't . . . be better off just dropping" her lawsuit against Scott. In her affidavit, Peoples claims that in the course of a conversation with Guzelian concerning her own prospects for employment at NTC, Guzelian told her that Randall "had a problem" with Scott "because `we really can't send her over there' or words to that effect." The district court ruled all of the alleged Guzelian statements4 inadmissible hearsay. Randall now appeals, arguing that NTC was an agent of Scott, at least for the limited purpose of retaliating against Randall. Guzelian's statements are therefore admissible, Randall argues, under Fed. R. Evid. 801(d)(2)(D), which provides that "a statement by the party's agent or servant concerning a  ____________________ 4. In his deposition, Guzelian denies that anyone at Scott or S.D. Warren ever exerted pressure to prevent Randall from working at its facilities or to force NTC to dismiss her entirely. NTC president Steven Broadhead made similar denials in his deposition. In fact, Broadhead stated in his deposition that Scott had never invoked its right under the _____ Service Agreement to reject any NTC employees. -6- 6 matter within the scope of the agency or employment" is not hearsay. Proof of this principal-agent relationship, Randall asserts, is contained in a clause in the contract between NTC and Scott that grants Scott veto power over employees NTC wishes to send to Scott facilities, and in the alleged Guzelian statements themselves. We need not resolve the question of whether Randall's agency argument propels the Guzelian statements over the apparent hearsay and double-hearsay hurdles. Even if the Guzelian statements were admissible, Randall's proffered assemblage of evidence would not get her to trial. A rational factfinder simply could not conclude from the summary judgment record that Randall had satisfied her ultimate burden of proving that Scott retaliated against her because of her lawsuit.5 Randall's proffered evidence implicates Scott only by virtue of an inferential giant step. While Randall perhaps has mustered some evidence suggesting  ____________________ 5. We assume arguendo that Randall satisfied her prima facie ________ burden. See Petitti v. New England Tel. & Tel. Co., 909 F.2d ___ _______ ___________________________ 28, 33 (1st Cir. 1990). Scott has "adopted" NTC's non- discriminatory justifications for the alleged adverse employment actions -- that is, the need to send Randall to non-Scott facilities for training and the unavailability of work resulting in her ultimate layoff. Once the defendant has met his burden of production, the presumption of retaliation raised by the plaintiff's prima facie case dissolves, and we simply look to the entire summary judgment record to assess whether the plaintiff has met her ultimate burden of proving that the defendant's proffered reason is a pretext for retaliation. See Mesnick v. General Elec. Co., ___ _______ _________________ 950 F.2d 816, 823 (1st Cir. 1991), cert. denied, 112 S. Ct. _____ ______ 2965 (1992). -7- 7 that NTC took action against her because she persisted in her lawsuit against Scott, an important NTC customer, she has not offered sufficient evidence to enable a rational factfinder to conclude that Scott instructed NTC to keep her away from its facilities or to lay her off because of her lawsuit. Rather than implicating Scott, the first Guzelian statement contained in Randall's deposition actually cuts against her argument, since it suggests that Scott had no _______ problem with her work for NTC. The second and third Guzelian statements in Randall's affidavit might indicate that "someone" at Scott thought that Randall should not work at certain Scott facilities for unspecified reasons, but there is no indication, or even an allegation, that these __________ statements came from anyone with the authority to bind Scott. See Smith v. Stratus Computer, Inc., 40 F.3d 11, 18 (1st Cir. ___ _____ ______________________ 1994) (holding that plaintiff's failure to adduce evidence that maker of statement made or influenced personnel decision rendered comment irrelevant to issue of discriminatory animus). The inferential leap from these anonymous statements to the conclusion that someone with authority at Scott must have ordered NTC to keep her away from certain Scott facilities and ultimately fire her -- or that the motivation behind these "orders" was Randall's sex discrimination lawsuit -- is far too great for any reasonable factfinder to undertake. The Guzelian statement contained in -8- 8 Peoples' affidavit provides Randall's complaint with no additional sustenance; it, too, fails to link Scott to NTC's decision to lay her off, suggesting only that Guzelian was ________ uncomfortable sending Randall to Scott facilities. Nor do any of the other factors that Randall points to -- e.g., Scott's importance to NTC as a customer and Scott's veto power under the Service Agreement -- bolster her case sufficiently to get her to trial. None of these factors could possibly support a reasonable inference that Scott retaliated against Randall and caused the adverse employment actions she suffered at NTC. Thus, Randall has failed to adduce sufficient evidence to meet her burden at trial, and the defendants are therefore entitled to judgment as a matter of law. Affirmed. Costs to Appellees. Affirmed. Costs to Appellees. ________ __________________ -9- 9