# United States Court of Appeals
## For the First Circuit

No. 18-1377

ERIKA D. LUCEUS,

Plaintiff, Appellant,

v.

STATE OF RHODE ISLAND; RHODE ISLAND DEPARTMENT OF
LABOR AND TRAINING,

Defendants, Appellees,

ROBERT LANGLAIS; KATHY CATANZARO; ROSE LEMOINE;
JESSICA JOHNSON; JASON BLISS WOHLERS,

Defendants.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

———————————

Before

Thompson, Circuit Judge,
Souter,* Associate Justice,
and Lipez, Circuit Judge.

———————————

Casby Harrison, III for appellant.
Katherine Connolly Sadeck, Special Assistant Attorney
General, with whom Michael W. Field, Assistant Attorney General,
was on brief, for appellees.

———————————

* Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

May 8, 2019

**SOUTER**, **Associate Justice**.  Erika Luceus, an employee of the call center of the Rhode Island Department of Labor and Training, sued the Department and the State of Rhode Island for discrimination in violation of Title VII of the Civil Rights Act of 1964.  See 42 U.S.C. § 2000e-2.  Luceus claimed that the Department's promotion practices have a disparate impact on minority employees, and that the Department has declined to promote her because she is black.  The District Court granted summary judgment to the defendants, from which Luceus appeals.  We affirm.

## I

Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We review the District Court's grant of summary judgment de novo.  Jones v. City of Boston, 752 F.3d 38, 46 (1st Cir. 2014).

## A

We begin with Luceus's claim of disparate impact.  Title VII bars the use of facially neutral "'employment practices that cause[] a disparate impact on the basis of race' unless those practices are justified by business necessity."  Id. (quoting 42 U.S.C. § 2000e-2(k)).  Luceus alleges that the Department's use of "three-day-rule assignments" as a first step leading to promotion of lower-level employees at the call center has a disparate impact on minority employees.  A three-day-rule assignment is a temporary

- 3 -

appointment made by the Department to fill a vacant position.[1]  The Department, however, sometimes makes such appointments permanent. Luceus alleges that three-day-rule assignments are awarded more often to white employees than minority employees, and that white employees thus are more likely to receive permanent promotions. The record shows that between 2009 and September 2014 (when she first complained to the Department's human resources office), only one minority employee received a three-day-rule assignment, as compared with seven white employees.  Luceus also provides affidavits from eight coworkers who attest that minority employees are less likely to receive three-day-rule assignments.

This evidence, however, is not enough by itself to make a prima facie showing of disparate impact.  Except in unusual cases of overwhelming evidence, intuition is not to be trusted, and in order to reach the required prima facie threshold a plaintiff ordinarily must demonstrate that there is "a significant statistical disparity" between the employment outcomes for white and non-white employees.  Ricci v. DeStefano, 557 U.S. 557, 587 (2009).  To be sure, "the absence of such analyses, by itself, does not automatically doom the plaintiff's efforts."  EEOC v.

_____

[1]  The term "three-day-rule assignment" derives from a provision in the relevant State collective-bargaining agreement that requires a union employee to be paid the amount associated with a temporarily assigned position if the employee stays in the position for at least three days.  Luceus v. Rhode Island, No. 15-cv-489, 2018 WL 1626263, at *1 (D.R.I. Mar. 30, 2018).

- 4 -

Steamship Clerks Union, Local 1066, 48 F.3d 594, 606 (1st Cir. 1995). Statistical analysis may not be necessary in a case with a "singularly compelling factual context," in which "the logical force of the conclusion that the numbers suggest" is obvious. Id. at 604-605. But the data provided by Luceus do not bespeak such an exceptional case. This is the usual case, in which evidence of a statistical character is needed to show that any disparities are "unlikely to have occurred by chance." Fudge v. City of Providence Fire Dep't, 766 F.2d 650, 658 (1st Cir. 1985)

Here, Luceus has failed to demonstrate "a significant statistical disparity" on the basis of race. Ricci, 557 U.S. at 587. She has not presented any expert testimony or statistical computations demonstrating that the alleged disparities in three-day-rule assignments did not "occur[] by chance." Fudge, 766 F.2d at 658. Indeed, she has not even presented reliable data on which a statistical conclusion would rest, because she has not established the racial composition of the pools of employees eligible for three-day-rule assignments in the instances she cites. Hence, the District Court explained that the record does not indicate "the number of management-ready minority and white union members" at the call center where Luceus works. Luceus v. Rhode Island, No. 15-cv-489, 2018 WL 1626263, at *7 (D.R.I. Mar. 30, 2018). This "fail[ure] to provide important information regarding the pool of applicants" is a critical "flaw[] in the

statistical evidence."  See LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 848 (1st Cir. 1993).

Although this deficiency alone would doom the disparate impact claim, the defendants offered evidence that the racial disparities alleged by Luceus were not statistically significant. Using the data she provided, they presented expert analysis demonstrating that there was "no statistically significant evidence of a disparate impact" stemming from the three-day-rule assignments that were the subject of Luceus's complaint.  Affidavit of Dr. Craig Lawson Moore ¶¶ 47-49.  Luceus offers no comparable rebuttal of this analysis.

In sum, based on the record, we conclude that this is not a case in which Luceus can show a disparate impact in the absence of statistical and statistically significant evidence. Cf. Steamship Clerks, 48 F.3d at 606.  Because she has failed to provide such evidence, the District Court correctly granted summary judgment to the defendants on her claim of disparate impact.

**B**

Luceus also raises a claim of disparate treatment in violation of the Title VII bar against employers "treat[ing] some people less favorably than others because of their race."  Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977); see 42 U.S.C. § 2000e-2(a).  Luceus argues that the Department's

decision not to promote her was motivated by discriminatory racial animus.

Because Luceus has not provided direct proof of discriminatory animus, the burden-shifting sequence set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973), applies. At the outset, Luceus must establish a prima facie case by showing that (1) she is "a member of a protected class"; (2) she is "qualified" for the job she seeks; (3) she has "suffer[ed] an adverse employment action at the hands of her employer"; and (4) there is "some evidence of a causal connection between her membership in a protected class and the adverse employment action." Bhatti v. Trustees of Boston U., 659 F.3d 64, 70 (1st Cir. 2011). Once she has established a prima facie case, the burden of production shifts to the defendants, who "must establish a legitimate, nondiscriminatory justification for the adverse employment action." Ray v. Ropes & Gray LLP, 799 F.3d 99, 113 (1st Cir. 2015). If the defendants meet their burden on that issue, they are entitled to summary judgment unless Luceus "raise[s] a genuine issue of material fact that 'the reasons offered by [the defendants] were a pretext for discrimination.'" Id. (quoting Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012)).

Like the District Court, however, "[w]e may 'bypass the prima facie case issue.'" Cham, 685 F.3d at 95 (quoting Freadman

v. <u>Metro. Prop. & Cas. Ins. Co.</u>, 484 F.3d 91, 100 (1st Cir. 2007));
see <u>Luceus</u>, 2018 WL 1626263, at *7.  Assuming without deciding
that Luceus has established a prima facie case of disparate
treatment, it is nonetheless clear that she "'has not mustered
enough evidence for a reasonable jury to conclude that [the
defendants'] stated reason'" for failing to promote her "was
pretextual."  <u>Cham</u>, 685 F.3d at 95-96 (quoting <u>Freadman</u>, 484 F.3d
at 100).

The Department's stated justification for declining to
promote Luceus was her disruptive conduct in the workplace: it
presented evidence that she was involved in an altercation with a
coworker in which the two had to be physically separated, and that
she had "a history of returning late from work breaks, refusing to
collaborate with her coworkers, and posting signs in her cubicle
to provoke management."  <u>Luceus</u>, 2018 WL 1626263, at *7.  Luceus
does not offer enough evidence to rebut that legitimate,
nondiscriminatory justification.  She does not dispute most of the
Department's allegations of disruptive conduct and, indeed,
explicitly acknowledges the truth of several of them.  Defendants'
Statement of Undisputed Facts ¶¶ 184-194, 202-218.  She also fails
to identify other, white employees "similarly situated" to her "in
all relevant respects" who were "treated differently by the
employer," as might permit a jury to find that the employer's
reason was pretextual.  <u>Ray</u>, 799 F.3d at 114 (quoting <u>Kosereis</u> v.

- 8 -

Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003)); see Luceus, 2018 WL 1626263, at *8 (explaining that Luceus "has not pointed to someone promoted in her stead that had, for example, a comparable history of workplace recalcitrance").

The primary evidence Luceus offers to counter the defendants' stated justification is the data she offers to support her disparate impact claim. But "the central focus" of a disparate treatment claim is "'less whether a pattern of discrimination existed and more how a particular individual was treated, and why.'" Ray, 799 F.3d at 116 (quoting LeBlanc, 6 F.3d at 848). For that reason, "'statistical evidence of a company's general hiring patterns, although relevant, carries less probative weight'" in a disparate treatment claim, "and 'in and of itself[] rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision.'" Id. (quoting LeBlanc, 6 F.3d at 848). Nor is there any basis in the record to treat this case as exceptional, not when Luceus has failed to deny most of the charges of workplace misbehavior and has failed to support the disparate impact claim itself. Summary judgment to the defendants on this claim was soundly granted.

**II**

Before us, Luceus also raises a variety of claims based on Rhode Island law. She says that the Department has violated the State's equal opportunity laws, and that three-day-rule

- 9 -

assignments likewise violate State law.  See Appellant Br. 31-34, 41-51.

Luceus's notice of appeal, however, specified that she was appealing only the District Court's judgment with respect to the Title VII disparate impact and disparate treatment claims. That limitation is fatal to the issues she now wishes to raise under Rhode Island law.  The general rule is that when "an appellant . . . chooses to designate specific determinations in [her] notice of appeal—rather than simply appealing from the entire judgment—only the specified issues may be raised on appeal." Constructora Andrade Gutiérrez, S.A. v. Am. Int'l Ins. Co. of Puerto Rico, 467 F.3d 38, 43 (1st Cir. 2006) (quoting United States v. Universal Mgmt. Servs., Inc., 191 F.3d 750, 756 (6th Cir. 1999)).  Luceus identifies no reason for departing from that rule here.

**III**

We affirm the District Court's grant of summary judgment to the defendants on Luceus's claims of disparate impact and disparate treatment under Title VII.