UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 97-1065

IVAN RUIZ, ET AL.,

Plaintiffs, Appellants,

v.

POSADAS DE SAN JUAN ASSOCIATES,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Selya, Circuit Judge,

Cyr, Senior Circuit Judge,

and Boudin, Circuit Judge.

Jose L. Rivero Vergne for appellants.
Nilda M. Navarro-Cabrer for appellee.

August 18, 1997

CYR, Senior  Circuit  Judge. Appellants Ivan Ruiz and

Estela Diaz, husband and wife, challenge various district court

rulings relating to their claims against appellee Posadas de San

Juan Associates, Inc. ("Posadas" or "Hotel"), alleging,  inter  alia,

age discrimination under the Age Discrimination in Employment Act

(ADEA), 29 U.S.C. S 621 et seq., and Puerto Rico "Law 100," 29

L.P.R.A. S 146 et seq. As we conclude that appellants failed to

generate a trialworthy dispute regarding their federal claims, we

affirm the district court judgment.

I 

BACKGROUND

In 1985, appellant Ivan Ruiz began work as a housekeeper

at the "Hotel San Juan & Casino" ("Hotel"), owned by Posadas, a New

York corporation. By 1987 Ruiz had been promoted to Team Leader,

Housekeeping Department, responsible for supervising housekeeping

in Hotel "public areas" ( e.g., offices, meeting rooms, gymnasium).

Beginning in 1991, he worked five nights a week on the 8:00 p.m. to

4:00 a.m. shift.

As a Team Leader, Ruiz received mixed performance

ratings. During the period from 1987 through 1993, the average

annual performance rating Ruiz received ranged from lows of 3.30 in

The material facts in genuine dispute are related in the light
most favorable to appellants, who opposed summary judgment.  Velez-
Gomez v. SMA Life Assur. Co., 8 F.3d 873, 875 (1st Cir. 1993).

2

1987 and 1989, to a high of 4.02 in 1990. Ruiz received regular

salary increases throughout his tenure. In addition, he received

three merit certificates for excellent supervisory performance and

a "good" overall rating in 1992. 

During his tenure, however, Ruiz received some criticism.

In 1988, he was criticized by Felix Joseph, his supervisor at the

time, for "total negligence . . . or total and complete disregard

of  . . .  Company Policy or both," following an unannounced one-day

absence from work. In 1990, a different supervisor, Eddie Ortiz,

noted "major cleaning deficiencies" in the areas for which Ruiz was

responsible specifically, trash not picked up, rooms not

cleaned, and furniture not dusted  as well as a general "lack of

attention" to cleaning responsibilities in the Hotel corporate

offices. Finally, in 1993, yet another supervisor, Jorge Serrano,

warned Ruiz about poor cleaning in the gymnasium and filed a

contemporaneous disciplinary report against him. 

Ruiz, on the other hand, dates most of his employment

problems from late 1993, when Luis Rivera, age 32, became Hotel

Executive Housekeeper. Rivera regularly criticized Ruiz, verbally

and in writing, on his job performance. In March 1994, Rivera

On a scale of 1 to 5, "3" indicated that standard job
requirements were met; "4" that the requirements were exceeded "in
many instances"; "5" that the requirements were "consistently"
exceeded. 

For example, in February 1994 Rivera notified Ruiz that many
complaints had been lodged regarding the Hotel offices and that
inspection had disclosed failures to dust, pick up trash, clean
window areas, and clean bathrooms. Rivera warned Ruiz that he
expected "immediate action" and that "[f]ailure to comply" would

3

rated Ruiz's performance for 1993 as "need[ing] improvement" in

three areas: accepting criticism, solving problems, and quality of

performance. Rivera noted that Ruiz blamed others for his own

deficiencies, responded lackadaisically to guest requests, and

provided inadequate supervision to subordinates. After Ruiz com-

plained to Rivera, the performance evaluation was changed from

"need[ing] improvement" to "satisfactory," but Rivera did not

soften the negative written commentary. The average rating Ruiz

received for 1993 was 3.69. See supra note 2.

Beginning in 1993, Victoria Greber, Executive Assistant

Manager, "Rooms Division," likewise complained that Hotel public

areas were found to be untidy following Ruiz's shift. Felipe

Mercado, the night manager ultimately responsible for supervising

Ruiz, complained directly to Greber about uncleanliness in areas

for which Ruiz was responsible. Other unfavorable comments

relating to the untidiness of Hotel public areas following Ruiz's

shift were noted in the Hotel log books daily diaries describ-

"result in disciplinary action." 

The annual ratings Ruiz received during his tenure were:

Evaluation Date Score Comparison  to  Rivera's
Rating  of  Ruiz  for  1993
calendar year

03-02-94 3.69 the rating given by
Rivera
11-12-92 3.68 lower than Rivera's score
11-01-91 3.39 lower " " " 
10-30-90 4.02 higher " " " 
11-10-89 3.30 lower " " " 
07-30-89 3.47 lower " " " 
01-06-87 3.30 lower " " " 

4

ing,  inter  alia, the physical condition of the Hotel  by various

Hotel employees including Rivera.

During the Spring of 1994, the occupancy rate at the

Hotel dropped dramatically, resulting in severe shortfalls in Hotel

revenues and prompting work-force reductions by the administration.

In May 1994, Greber met with Rivera and Egidio Colon, Human

Resources Director, to evaluate the personnel records of all

employees holding an employment position within any category

targeted for reduction, which included a Team Leader position in

the Housekeeping Department, "Rooms Division."

After the personnel file on each Team Leader in the

Housekeeping Department had been reviewed, and following receipt of

input from Colon and Rivera, Greber determined to discharge Ruiz.

According to both Colon and Greber, the dispositive factors were

the negative written evaluations (Ruiz posted the lowest average

scores of any Team Leader), the negative commentaries, the disci-

plinary warnings, the complaints from night manager Felipe Mercado,

and the negative log-book notations regarding the uncleanliness of

the public areas following Ruiz's shifts. 

On June 2, 1994, Ruiz was fired, after being told that

the Hotel was undergoing "reorganization," and "adjustments" in the

At the time, there were four Team Leaders in the Housekeeping
Department: John Waters, age 61, Steven Rosado, age 27, Carlos
Carrasquillo, age 34 all of whom worked the day shift and
Ruiz, age 61, who worked the night shift only. Carrasquillo and
Rosado had less seniority in their respective Team Leader positions
than Ruiz. Rosado had been a Team Leader for only seven months,
and Carrasquillo had become a Team Leader one year after Ruiz. 

5

"Rooms Division" were necessary. Following Ruiz's dismissal,

supervisory responsibility for the night shift was divided between

Carrasquillo and Waters, both of whom continued to serve as Team

Leaders on their daytime shifts as well. 

On June 7, 1994, Ruiz filed age-discrimination charges

with the Equal Employment Opportunity Commission and the

Antidiscrimination Unit of the Puerto Rico Department of Labor,

requesting reinstatement. On November 18, 1994, a preexisting Team

Leader position in the Housekeeping Department became vacant when

Mr. Rosado,  see  supra note 5, was promoted to Public Areas Manager.

The Hotel did not inform Ruiz of the vacancy, however, instead

promoting Alexis Vargas, age 26, to Team Leader.

On March 24, 1995, his administrative remedies exhausted

and a "right to sue" letter in hand, Ruiz (and spouse) filed a

complaint in the United States District Court for the District of

Puerto Rico, alleging that the Hotel, during 1993-94, had a policy

of discharging older employees, in violation of the ADEA and "Law

100." Following extended discovery proceedings, the Hotel moved

for summary judgment. In their opposition, appellants asserted,

for the first time, that the Hotel's failure to rehire Ruiz, and

The Hotel fired ten employees in all; two within the protected
age group, including Ruiz. Ruiz was the only Team Leader in the
Housekeeping Department to be fired. Two nonsupervisory employees
in the same department were fired, aged 25 and 29. 
In addition, another 111 employees left the Hotel between
April and June, 1994. These included temporary employees whose
contracts were not renewed; retirements; resignations; and
terminations for cause. Among these 111 employees, nine ( i.e., 8%)
were 40 years or older.

6

its hiring of Vargas, likewise violated Puerto Rico "Law 100."

Thereafter, appellants sought leave to amend their original

complaint to state additional ADEA claims, alleging a failure to

rehire based on age and claiming retaliation in response to Ruiz's

filing of administrative charges against the Hotel.

The district court granted summary judgment for the

Hotel, after determining that the proffered evidence on the ADEA

discriminatory discharge claim was inadequate for a prima facie

showing that the Hotel either failed to treat age neutrally or

replaced Ruiz with a younger worker,  see  McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973); Woodman v. Haemonetics Corp., 51 F.3d

1087 (1st Cir. 1995). It also dismissed the pendent Commonwealth

claim under "Law 100," as there was no longer an independent basis

for asserting federal jurisdiction. Finally, the court denied the

motion to amend the complaint, on the ground that its new allega-

tions, "even if supported, . . . [would] not sustain an ADEA claim.

That is, plaintiffs would [sic] have established a  prima  facie case

of age discrimination."

II

DISCUSSION

We consider the summary judgment ruling  de  novo, viewing the
record in the light most favorable to Ruiz, the nonmoving party,
and drawing all reasonable inferences in his favor. LeBlanc v.
Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). On the
other hand, we must affirm if the record reveals no trialworthy
issue of material fact and the Hotel was entitled to judgment as a
matter of law. See id. Moreover, we may affirm "on any indepen-
dently sufficient ground." Polyplastics, Inc. v.  Transconex, Inc. ,
827 F.2d 859, 860-61 (1st Cir. 1987).

7

A. Wrongful Discharge Claim Under ADEA

1. Prima Facie Case

Our analysis is governed by the familiar burden-shifting

framework enunciated in  McDonnell Douglas , 411 U.S. at 802-04, and

adapted for use in ADEA cases,  see,  e.g.,  Woodman, 51 F.3d at 1091.

Absent direct evidence of age discrimination, a claimant whose

employment was terminated through a reduction in force ("RIF")

first must make a prima facie showing that: 1) he was at least

forty years old; 2) met the employer's legitimate job expectations;

3) was fired; and 4) that age was not treated neutrally in imple-

menting the RIF, or younger individuals were retained in the same

position. Id. We need not consider the fourth prong, however,

including Ruiz's contention that the Hotel retained two younger

employees i.e., Rosado and Carrasquillo in the same occupa-

tional classification, since there is an alternative ground for

affirmance. See Polyplastics, Inc. v. Transconex, Inc., 827 F.2d

859, 860-61 (1st Cir. 1987). We therefore assume, without

deciding, that Ruiz made out a  prima  facie case of age discrimina-

tion by demonstrating that younger workers were retained in the

same position. See  Pages-Cahue v.  Iberia Lineas Aereas De Espana ,

82 F.3d 533, 538 (1st Cir. 1996).

2. Pretext

In order to rebut the presumption that arises upon the

establishment of a prima facie case i.e., that the employer

engaged in intentional age-based discrimination, see Woodman, 51

F.3d at 1091 the employer need only produce enough competent

8

evidence, taken as true, to enable a rational factfinder to

conclude that there existed a nondiscriminatory reason for the

challenged employment action,  see  St. Mary's Honor Center v.  Hicks,

509 U.S. at 502, 509 (1993); Woodman, 51 F.3d at 1091 (same). At

that point, the employee "must demonstrate that the proffered

reason for the adverse employment action was simply a pretext for

age discrimination," Goldman v. First  Nat'l  Bank  of  Boston, 985

F.2d 1113, 1117 (1st Cir. 1993), which in turn requires that the

employee proffer enough competent evidence to support  two findings:

1) the employer's proffered reason was pretextual;  and, 2) its true

motive was age discrimination. Udo v.  Tomes, 54 F.3d 9, 12-13 (1st

Cir. 1995). The burden of persuasion remains on the plaintiff

employee at all times. LeBlanc, 6 F.3d at 842.

There is no dispute that the Hotel experienced signifi-

cant financial difficulties in the Spring of 1994 and terminated

ten employees as part of a legitimate RIF. Moreover, Victoria

Greber, the executive directly responsible for the decision to

discharge Ruiz, attested that financial difficulties prompted the

employee discharges, both in her own department and throughout the

Hotel. She explained, again without contradiction, that she

determined to discharge a Team Leader in the Housekeeping Depart-

ment because she considered it an expendable "medial" position

between the housekeepers, who do the cleaning, and the Hotel

Ruiz so concedes on appeal. See Brief for Appellants at 14
("Ruiz does not contest that a reduction in force was necessary in
order to confront the Hotel's economic problems. . . ."). 

9

management. She further explained that Ruiz was selected for

termination because his employment record was the weakest among all

Team Leaders. Careful review bears out that Greber's explanation

is entirely consistent with the undisputed documentary evidence

that Ruiz had received more disciplinary warnings, and the lowest

average evaluation ratings, of any Team Leader in the Housekeeping

Department, as well as the only negative written commentary. Thus,

the Hotel met its burden of production under the second prong of

the McDonnell Douglas test. See LeBlanc, 6 F.3d at 844-45.

Accordingly, the presumption of age discrimination has

vanished, see id., and we inquire whether the evidence, " in its

entirety," would permit a reasonable factfinder to infer that the

proffered reason for the dismissal was pretextual  and that the true

reason was an age-based animus, see id. (emphasis added). In

pursuing this inquiry, we focus on whether the employer believed

that its proffered reason was credible. See Mesnick v. General

Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991). That is, Ruiz must

do more than cast doubt on the rationale proffered by the employer,

see  Connell v.  Bank of Boston , 924 F.2d 1169, 1172 (1st Cir. 1991),

the "evidence must be of such strength and quality as to permit a

reasonable finding that the . . . [termination] was obviously or

manifestly unsupported." Brown v. Trustees  of  Boston  Univ., 891

F.2d 337, 346 (1st Cir. 1989) (emphasis added) (internal quotation

marks omitted). The summary judgment record generated no

10

trialworthy issue on the ADEA wrongful discharge claim. 

Ruiz attempted to demonstrate that Rivera was responsible

for an atmosphere of age-based discrimination, in the Housekeeping

Department, which influenced the decision to terminate him. He

relied on an affidavit from Carmen Pena, age 54, formerly employed

in the Housekeeping Department, who attested that Rivera expected

more from her than from younger workers; asked her age; stated that

she didn't look good for her age; inquired about her health and

suggested that a job change might be beneficial. Pena acknowl-

edged, however, that Rivera never asked, let alone ordered, her to

transfer. Moreover, Pena attributed another remark to Rivera 

An affidavit from Miguel Moreales, formerly a housekeeper with
the Hotel, concludes that Ruiz was an excellent supervisor, but
does not purport to compare Ruiz's work record with that of other
Team Leaders. Moreales also opines that Ruiz's disciplinary
warnings were unfounded because Ruiz always assigned a housekeeper
to clean, and checked the area afterward. However, these
conclusory statements did not demonstrate that the areas about
which Ruiz was warned had been properly cleaned on the particular
occasions identified in the warnings he received, much less that
the warnings were unfounded, nor that Victoria Greber who made
the decision to fire Ruiz, see supra p. 5 could not reasonably
have believed that the disciplinary warnings were warranted. Cf.
Mulero-Rodriguez v. Ponte,  Inc., 98 F.3d 670, 674-75 (1st Cir.
1996) (wherein plaintiff presented evidence that employer's cited
reasons were pretextual).
Similarly, Ruiz attests that he was discharged due to his age,
a belief based on his judgment that he had a good employment
record. Even assuming his employment record passed muster,
however, Ruiz proffered no evidence which would enable a rational
jury to find that the Hotel's employment action was not soundly
founded on its determination that Ruiz possessed the least worthy
work-performance-record among all competing Team Leaders. 
Finally, Ruiz alleged that the Hotel conducted a systematic
purge of older workers, but admits he has no such personal
knowledge or evidence. It is axiomatic that more is required than
mere conclusory allegations and unsupported conjecture. See
LeBlanc, 6 F.3d at 841; Goldman, 985 F.2d at 1116.

11

that all female workers at the Hotel were  overworked. In addition,

the Moreales affidavit states, inter alia, see also supra note 9,

that Rivera harbored an "obvious" bias toward younger workers. The

only explication Moreales offered for this conclusion, however, was

that Rivera had pressured older workers, unfairly reprimanded older

workers in front of younger ones, and treated two older supervi-

sors, including Ms. Pena, in a "disrespectful manner," but without

providing an evidentiary foundation upon which it might reasonably

be inferred that any pressure, reprimand, or disrespect was either

discriminatory or age-based. See LeBlanc, 6 F.3d at 841.

Although we have allowed as how circumstantial evidence

of a general discriminatory environment may add "color" to an

employer's decisionmaking process, see Conway v. Electro  Switch

Corp., 825 F.2d 593, 597 (1st Cir. 1987), we have explained that

"[p]roof of a general atmosphere of discrimination is not the

equivalent of proof of discrimination against an individual,"

Sweeney v.  Board of Trustees of Keene State College , 604 F.2d 106,

113 (1st Cir. 1979). In all events, these proffers failed to

establish a trialworthy claim that a "general" atmosphere of age-

based discrimination existed in the Housekeeping Department, let

alone that Ruiz was "riffed" for any reason other than the relative

weakness of his work record. Instead, without confronting the

Ruiz presented no competent evidence that the Hotel "riffed"
him, or any other employee,  based  on  age. There is no evidence of
any comment by anyone associated with the Hotel, including Rivera
and Greber, about Ruiz's age or that age played any part in
determining which employees would be let go. Moreover, the 1993
annual rating received from Rivera was the second highest Ruiz ever

12

evidence, Ruiz concludes that he must have been discriminated

against because his record had been improving before Rivera became

his supervisor and because his eight-year employment record cannot

fairly be compared to the records of Team Leaders with less tenure.

Ruiz's logic escapes us on both scores. First, as already noted,

Ruiz received his next best performance rating ever from none other

than Rivera. Second, if Team Leaders with less tenure   i.e. less

experience received better performance ratings than the more

experienced Ruiz, it is difficult to discern how their superior

performance reflects less well on them.

Furthermore, as we have stated repeatedly, we do not

assume the role of a "super personnel department[], assessing the

merits  or even the rationality  of employers' nondiscriminato-

ry business decisions." Mesnick, 950 F.2d at 825; see also

LeBlanc, 6 F.3d at 846 (similar). So it must be here. See Smith

v. Stratus  Computer,  Inc., 40 F.3d 11, 16 (1st Cir. 1994), cert.

denied, --- U.S. ---, 115 S. Ct. 1958, 131 L.Ed.2d 850 (1995)

(stating that relief will not be granted "to a plaintiff who has

been discharged unfairly, even by the most irrational of managers,

received. Nor did Ruiz address the undisputed evidence that all
but two employees "riffed" by the Hotel were under forty,  see  supra
note 6, which tends to suggest that the alleged systematic purge of
employees was age-blind. Cf.  Hebert v.  Mohawk Rubber Co. , 872 F.2d
1104, 1114 (1st Cir. 1989) (noting "rather startling" statistical
evidence that 76% of all older employees were "riffed"). Finally,
and most importantly, Ruiz proffered no evidence that he, among all
employees holding a targeted Team Leader position, had not received
the most disciplinary warnings, negative written comments,
complaints from the night manager, and the lowest average annual
performance rating an average compiled from ratings given by
various supervisors in addition to Rivera. 

13

unless the facts and circumstances indicate that discriminatory

animus was the reason for the decision"). 

For the foregoing reasons, we hold that Ruiz failed to

proffer competent evidence adequate to ward off summary judgment on

the ADEA claim for wrongful discharge.

B. The Motion to Amend 

Ruiz next contends that the district court erred in

denying the motion to amend the complaint,  see Fed. R. Civ. P. 15,

to include ADEA claims based on the Hotel's allegedly discriminato-

ry and retaliatory failure to rehire him. See supra p. 6. 

1. Standard of Review

As Ruiz did not propose the amended complaint until seven

months after the Hotel had moved for summary judgment, we treat the

motion to amend as "an attempt to alter the shape of the case in

order to defeat summary judgment." Glassman v. Computervision

Corp., 90 F.3d 617, 623, (1st Cir. 1996). Consequently, Ruiz must

"demonstrate . . . that the proposed amendments were supported by

substantial and convincing evidence," Resolution  Trust  Corp. v.

Gold, 30 F.3d 251, 253 (1st Cir. 1994) (citations and internal

quotation marks omitted). Under the abuse of discretion standard,

any sound reason apparent from the record is sufficient to support

the district court ruling, see id., including but not limited to

undue delay, bad faith, dilatory motive, and the futility of the

We review the ruling on the motion to amend for "abuse of
discretion." Resolution Trust Corp. v.  Gold, 30 F.3d 251, 253 (1st
Cir. 1994).

14

amendment,  see  Grant v.  News Group Boston, Inc. , 55 F.3d 1, 5 (1st

Cir. 1995).

2. The District Court Ruling 

Ruiz contends that the district court confused the

requirements an ADEA plaintiff must meet to establish a  prima  facie

discriminatory discharge claim, with the separate standards for

establishing prima facie claims of retaliation and discriminatory

failure to rehire. He points to the district court's statement

that the retaliation and failure-to-rehire claims, "even if

supported, will not sustain an ADEA claim. That is, plaintiffs

would [sic] have established a  prima  facie case of age discrimina-

tion[,]" and argues that the district court erroneously ruled that

Ruiz could not prevail on the proposed  retaliation and  failure-to-

rehire claims because he could not meet the prima facie showing

required for a  discriminatory  discharge claim. We need not address

this contention, however, as the record discloses an adequate

alternative ground for affirmance. See  Resolution Trust Corp. , 30

F.3d at 253.

Given the tardiness of the motion to amend, the question

before us is whether Ruiz supported the proposed amended complaint

with enough "substantial and convincing evidence,"  id., of an age-

based discriminatory animus. See Woods v. Friction  Materials,

Inc., 30 F.3d 255, 260 (1st Cir. 1994) (stating that plaintiff must

show discriminatory animus in failure-to-hire case); Fennell v.

First Step Designs, Ltd. , 83 F.3d 526, 535 (1st Cir. 1996) (stating

that employee must demonstrate retaliatory animus); see also id.

15

(stating that court may dispense with burden-shifting framework,

and focus instead on whether the "evidence as a whole was suffi-

cient to generate a jury question on pretext and discriminatory

animus"). First of all, it must be noted that the mere fact Ruiz

was not rehired does not itself afford a basis for inferring age

discrimination. See Udo, 54 F.3d at 14 (stating that failure to

rehire may simply show employer did not want to rehire employee).

Second, though the timing of the decision to hire Vargas  coming

as it did five months after Ruiz filed administrative charges 

tends to favor Ruiz, it does not amount to "substantial and

convincing evidence" of an age-based animus. See  Resolution Trust

Corp., 30 F.3d at 253. 

In addition, the essential thrust of the proposed amended

complaint is that coupled with Rivera's alleged discriminatory

animus toward older employees the decision to hire Vargas,

rather than recall Ruiz, was patently irrational and, therefore,

must have been a pretext for discrimination. However, the underly-

ing thesis that Vargas's qualifications were so inferior that

the Hotel  could  only have been engaging in age-based discrimination

and/or retaliation against Ruiz when it chose not to notify or

rehire him is seriously flawed.

First, Ruiz did not proffer sufficient evidence to enable

a finding of discriminatory animus, either in the Housekeeping

Department at large or toward him in particular.  See  supra pp. 11-

14. Second, the fact that Ruiz, based on experience and past

performance, may have been qualified to hold the Team Leader

16

position which was given to Vargas, is  not evidence that the Hotel

was motivated by an age-based animus in withholding it from Ruiz.

See Woods, 30 F.3d at 262.

In conclusion, whether or not it was short-sighted to

bypass Ruiz in favor of Vargas, who had never received a disciplin-

ary warning, it cannot be said that it was so absurd as to defy

rational belief. See  Lehman v.  Prudential Ins. Co. of America , 74

F.3d 323, 329 (1st Cir. 1996) (refusing to "second-guess" hiring

decision "absent clearer evidence of irrationality"). According-

ly, we are not confronted with such disparities in their respective

employment records as would "virtually jump off the page and slap

us in the face," Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993)

(quoted in  Lehman, 74 F.3d at 329), let alone combine with evidence

of discriminatory animus to defeat summary judgment,  see  Smith, 40

F.3d at 16 (requiring minimally sufficient evidence of discrimina-

tory animus). Consequently, we are not at liberty to "substitute

. . . [our] views for those of the individuals charged with the

evaluation duty by virtue of their own years of experience and

expertise in the field in question." Id. (quoted in Lehman, 74

F.3d at 329).

Moreover, Vargas also received several commendations for work
performance in the Housekeeping Department, the Hotel laundry, and
as a driver and chauffeur, as well as performance ratings  at  least
comparable to those received by Ruiz. Vargas earned the following
annual performance ratings: 1987, 4.4; 1988, 3.74; 1989, 3.1;
1990, 4.0; 1991, 4.48; 1992, 4.3; 1993, 3.45; 1994, 3.59. See
also supra note 4. In addition, Vargas had worked the day shift,
which was regarded by Hotel management as more demanding than the
night shift worked by Ruiz. 

17

Therefore, as Ruiz proffered insufficient evidence from

which an age-based discriminatory animus might reasonably be

inferred in connection with the Hotel's decision to promote Vargas,

rather than rehire Ruiz, see Smith, 40 F.3d at 16, he has not met

the heavy burden of establishing that the proposed amended

complaint was supported by "substantial and convincing evidence."

Resolution Trust Corp., 30 F.3d at 253.

18

III

CONCLUSION

Finally, since the district court supportably dismissed

the federal claims, it permissibly declined to retain, see 28

U.S.C. S 1367, supplemental jurisdiction of the pendent claim under

Commonwealth "Law 100." See United  Mine  Workers  of  America v.

Gibbs, 383 U.S. 715, 726 (1966). Accordingly, the district court

judgment is affirmed. 

SO ORDERED.

19