Janice FLEBOTTE, Patricia Jez,
Robert Miklasiewicz, and
Gloria Gay, Plaintiffs,

v.

DOW JONES & COMPANY,
INC., Defendant.

No. Civ.A. 97–30117–FHF.

United States District Court,
D. Massachusetts.

June 10, 1999.

Michael O. Shea, Springfield, MA, for Janice Flebotte, plaintiffs.

Dennis M. Duggan, Jr., Robert M. Shea, Mark H. Burak, Donna Y. Porter, Peabody & Brown, Boston, MA, for Dow Jones & Company, Inc., defendant.

Robert Aronson, Law Offices of Robert Aronson, Springfield, MA, for Michael F. Ginsburg, objector.

## MEMORANDUM AND ORDER

FREEDMAN, Senior District Judge.

### I. INTRODUCTION

This employment discrimination case involves 1994 firings made by Dow Jones & Company, Inc. ("Dow Jones") at their customer relations call center in Chicopee, Massachusetts. The plaintiffs, four call center employees all above the age of 45 at the time of their terminations, have sued Dow Jones under the age discrimination components of Massachusetts General Laws chapter 151B. Dow Jones has moved for summary judgment on all claims. The plaintiffs have opposed and filed their own cross motion for summary judgment, as well as a host of additional motions.

### II. STANDARD OF REVIEW

Under the familiar standard of Rule 56, a federal district court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standards acts as a dam to hold back the flood of cases that lack either the factual

support or legal foundation to necessitate a trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). In culling the essential facts of the litigation, the Court scrutinizes the record in the light most favorable to the nonmoving party, "indulging all reasonable inferences in that party's favor," *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990), yet disregarding unsupported allegations, unreasonable inferences, and conclusory speculation. *See Smith v. F.W. Morse & Co.*, 76 F.3d 413, 428 (1st Cir.1996); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). If no genuine issue of material fact percolates through the record and the movant has demonstrated entitlement to judgment as a matter of law, then the Court will properly enter summary judgment. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wynne*, 976 F.2d at 794.

### III. FACTS

Dow Jones, the publisher of the Wall Street Journal newspaper, operates a customer relations department in Chicopee, Massachusetts with a call center for customer service requests and complaints to a toll-free number.[1] From 1989 to 1994, the call center included an "Intensive Care Unit" ("ICU"), staffed by a supervisor and customer service representatives ("CSR") to handle repeat complaints, mostly about delivery difficulties. CSRs in the ICU would make outbound calls, while regular CSRs would only answer incoming customer calls. In November 1994, Dow Jones eliminated the ICU and terminated the plaintiffs as part of a nationwide reduction-in-force aimed at balancing projected costs and revenues. Plaintiff Patricia Jez, age 47 at the time of termination, supervised the ICU, while plaintiffs Janice Flebotte (53), Gloria Gay (46), and Robert Miklasiewicz (52) worked as full-time CSRs alongside Walter Olbrych (55) and three part-time CSRs.

The demise of the ICU began in the fall of 1994, when Dow Jones management in New York instructed Michael Sheehan, its Director of Circulation Field Operations, to reduce the budget for his area of management, which included customer relations. In response, Sheehan then directed Kenneth Eickhoff, then the National Circulation Services Manager/Operations, to recommend how the company could reduce the customer relations budget for 1995 by $450,000. Eickhoff enlisted the assistance of Thomas Dalessio, the National Customer Relations Manager, in recommending cost cuts. Dalessio's suggestions included discontinuing the ICU and laying off its five full-time employees at a savings of $125,000. Eickhoff then added that suggestion in a November 1, 1994 memorandum to Sheehan concerning numerous cuts in the customer services salary budget.

In notes of a November 2 meeting with his superiors about those budget cuts, Sheehan wrote the letters "ICU" on a line next to the number five in parentheses, the figure 167,000 and the words "Age Issue" also in parentheses. *See* Exhibit 22 to

---

1. The Court considers the presentation of material facts under Local Rule 56.1 by plaintiffs' counsel a model for how not to oppose summary judgment. The rule requires that oppositions include "a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried." Rather than weaving a coherent summary of the facts supporting the legal theories in this case, counsel chose merely to highlight disputes with the paragraphs of the defendant's Rule 56.1 statement. Instead of providing a persuasive road map, counsel chose to compel the Court to wade through a cumbersome, unorganized morass of assertions, denials, and arguments in its search to view the facts in the light most favorable to the plaintiffs. In most cases, the Court would reject such a submission outright, but in this case the statement's bountiful citation to relevant depositions and documentation proves a saving grace and renders it borderline satisfactory.

Plaintiffs' Cross–Motion for Summary Judgment, at D01014. In his deposition, Sheehan stated that he made the "age issue" notation after "somebody raised the issue about a possible age suit." Michael Sheehan Deposition, Exhibit 5 to Plaintiff's Cross–Motion for Summary Judgment, at 47. Further, another page of Sheehan's meeting notes contains a section on "customer service reductions" with the typewritten words "eliminate the icu group" again next to the figure 167,000 again. *See* Exhibit 22, *supra*, at D01017. In the margin after the figure, Sheehan wrote "age classification." *Id.* In his deposition, Sheehan stated that he made that notation for the same reason he wrote "age issue" on his handwritten notes: "somebody— and as I mentioned, I don't recall who said it—brought up the possibility of an age suit." *See* Sheehan Deposition, *supra*, at 53.

After the November 2 meeting, Sheehan eliminated the ICU and the plaintiffs as part of widespread cost-cutting measures, which included closing a printing plant in Oklahoma and reducing the New York news staff of the Wall Street Journal. On November 17, the plaintiffs learned that their terminations would become effective on December 31. After announcing the firings, Dow Jones immediately transferred the responsibilities of the ICU employees for repeat calls to six call center supervisors with an average age of 47.

In March of 1995, the plaintiffs filed charges with the Massachusetts Commission Against Discrimination and later filed a four count complaint in Hampden County Superior Court charging the defendant with violating Massachusetts General Laws chapter 151B with respect to each terminated plaintiff. The defendant then removed to federal court based on diversity jurisdiction.

The Court has before it opposing motions for summary judgment. In addition, the plaintiff has filed several nondispositive motions.

## IV. DISCUSSION

In moving for summary judgment, Dow Jones contends that the plaintiffs can neither support a prima facie case of discrimination, nor prove that its termination decision was pretextual. The plaintiffs counter that sufficient evidence supports their prima facie showing and creates genuine issues of material fact.

### A. *Disparate Treatment*

■ Massachusetts law makes it unlawful "[f]or an employer in the private sector, by himself or his agent, because of the age of any individual, to ... discharge from employment such individual ... unless based upon a bona fide occupational qualification." Mass.Gen.Laws ch. 151B, § 4(1B). In the absence of overt acts of age discrimination, Massachusetts courts analyze chapter 151B age discrimination cases that allege disparate treatment under the same three-stage burden-shifting analysis applied by the Supreme Court in federal age discrimination cases. *See Mullin v. Raytheon Co.,* 164 F.3d 696, 699 (1st Cir.1999); *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Courts have adopted that analysis to allocate burdens of persuasion and production, and "progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Whalen v. Nynex Info. Resources Co.,* 419 Mass. 792, 647 N.E.2d 716, 718 (1995) (quoting *Burdine,* 450 U.S. at 255 n. 8, 101 S.Ct. 1089).

### 1. *Prima Facie Case.*

■ The first stage of the *McDonnell Douglas* framework requires the plaintiffs to show that they (1) were at least forty years old (the class protected by chapter 151B), (2) met their employer's legitimate

job performance expectations, (3) were terminated, and (4) because the challenged terminations occurred during a reduction in force, that the employer either did not treat age neutrally or retained younger persons in the same positions. *See Brennan v. GTE Government Sys. Corp.,* 150 F.3d 21, 26 (1st Cir.1998) (outlining parallel elements of prima facie case under chapter 151B and federal Age Discrimination in Employment Act); *Powers v. H.B. Smith Co.,* 42 Mass.App.Ct. 657, 679 N.E.2d 252, 255 (1997); *Plante v. Shawmut Bank, N.A.,* No. CIV. A. 95–0938, 1998 WL 408895, at *3 (Mass.Super.Ct. July 15, 1998) (Gants, J.) (discussing fourth element in reduction in force case); *see also Hidalgo v. Overseas Condado Ins. Agencies, Inc.,* 120 F.3d 328, 333 (1st Cir. 1997) (applying similar fourth element to prima facie burden in reduction in force case under ADEA); *Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d 148, 154 (1st Cir.1990) ("The prima facie case method conceived in *McDonnell Douglas* and nurtured in *Burdine* was 'never intended to be rigid, mechanized, or ritualistic.' "). Plaintiffs generally find the prima facie burden "quite easy to meet." *Villanueva v. Wellesley College,* 930 F.2d 124, 127 (1st Cir.1991).

In this case, Dow Jones agrees that the plaintiffs can meet the first three elements of the prima facie case, but argues that the plaintiffs cannot satisfy the fourth element because they have garnered no evidence to suggest that Dow Jones retained younger employees in their positions or failed to treat age in a neutral manner. In response, the plaintiffs argue that Dow Jones had younger employees perform the plaintiffs' job functions after their terminations. Further, the plaintiffs argue that notes from the meeting that resulted in the elimination of the ICU and age-related remarks by a supervisor directed at two of the plaintiffs also reveal age-based animus.

■ As to the plaintiffs' retention argument, an employer replaces an employee by hiring or reassigning someone "to perform the plaintiff's duties." *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 846 (1st Cir.1993) (quoting *Barnes v. GenCorp, Inc.* 896 F.2d 1457, 1465 (6th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990)). In considering the charge that the defendant reassigned younger employees to perform the plaintiffs' duties, "the relevant inquiry concerns the functions which the terminated employee[s] performed in [their] 'position[s]' and what happened to those functions after the termination." *Shenker v. Lockheed Sanders Inc.,* 919 F.Supp. 55, 60 (D.Mass. 1996). Accordingly, the plaintiffs must demonstrate "that younger employees, who prior to the reduction in force were not performing the primary functions of the plaintiff[s'] job[s], had these functions transferred to them." *Id.; see LeBlanc,* 6 F.3d at 846 (employee "not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work"); *see also Hindman v. Transkrit Corp.,* 145 F.3d 986, 992 (8th Cir.1998) (ADEA plaintiff "effectively replaced by many individuals adopting his duties may still be able to establish that he was the object of impermissible discrimination related to his age").

Plaintiff presents evidence that Dow Jones delegated the plaintiffs' primary responsibilities for handling outbound calls to customers with repeat complaints of delivery problems to six call center supervisors with almost exactly the same average age as the plaintiffs. Those supervisors, in turn, redelegated those multiple-complaint calling responsibilities to younger CSRs on a sporadic basis, as soon as a few weeks after the plaintiffs' termination. One supervisor, Linda Wilson, testified in her deposition that after the plaintiffs' termination, every supervisor had a CSR who, when needed, acted as a "helper," and exclusively performed the plaintiffs' calling functions. Thirty-nine of the forty-five CSRs who, in the defendant's words,

"on occasion, assisted in the performance of 'call backs,'" were younger than the youngest plaintiff—Gay at 46—in November 1994. Most of those CSRs were in their thirties, with the youngest, Cynthia Lopez, only twenty years old. *Cf. O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) ("the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."). Further, the defendant states that "there may be other persons who performed such work but have not been identified for a number of reasons," including a lack of records and passage of time.

█ Given that the plaintiffs' burden of establishing a prima facie case of disparate treatment is not particularly onerous, the Court concludes that the Dow Jones supervisors' sporadic and temporary redelegation of the plaintiffs' duties to younger CSRs constitutes retaining younger employees in the same position. It appears clear that on numerous occasions after the plaintiffs' termination, Dow Jones supervisors transferred the plaintiffs' primary calling functions to younger CSRs who had never performed those functions before the reduction in force. *See Shenker,* 919 F.Supp. at 60. The record reflects that when the supervisors assigned these younger "helper" CSRs to perform the plaintiffs' call-back duties, the CSRs made outbound calls exclusively, not in addition to their regular duties answering customer calls. They had not been performing related work. *See LeBlanc,* 6 F.3d at 846. Accordingly, the Court concludes that the plaintiffs have satisfied the fourth element of the prima facie showing under chapter 151B.

2. *Nondiscriminatory Justification*

To rebut the presumption of intentional age-based discrimination that arises when the plaintiffs establish their prima facie case, Dow Jones must only produce sufficient evidence that would enable a rational factfinder to conclude that a legitimate nondiscriminatory reason motivated the terminations. *See Hicks,* 509 U.S. at 509, 113 S.Ct. 2742; *Blare v. Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 646 N.E.2d 111, 115 (1995).

The Court views the record as presenting ample evidence to support Dow Jones' argument that the plaintiffs' terminations occurred as part of a plan to cut costs nationwide and streamline operations in Chicopee. Specifically, the defendant has produced significant amounts of deposition testimony, affidavits, and discovery documentation showing a credible effort by the company to improve customer relations by planning and implementing a so-called "First Call Resolution" program that would reduce the number of repeat calls, thereby obviating the need for the ICU in which the plaintiffs worked. Further, Dow Jones has produced credible evidence that the ICU terminations comprised only a small part of the overall cuts in the customer relations budget. Accordingly, the Court concludes that the defendant has successfully rebutted the presumption of discrimination.

3. *Pretext*

Having encountered a successful rebuttal, the plaintiffs must demonstrate that sufficient evidence exists for a rational factfinder to conclude that their employer's proffered reason for the adverse employment action constituted a mere pretext for age discrimination under chapter 151B. *See Kelley v. Airborne Freight Corp.,* 140 F.3d 335, 347–48 (1st Cir.1998); *Blare,* 646 N.E.2d at 117. The First Circuit has emphasized that there are numerous ways to support the circumstantial inference of discrimination:

These include, but are by no means limited to, statistical evidence showing disparate treatment by the employer of members of the protected class, ... comments by decisionmakers which den-

igrate those over forty, ... the incidence of differential treatment in the workplace, ..., and the deployment of younger replacements.... Above all, courts will look at evidence of discrimination not in splendid isolation, but as part of an aggregate package of proof offered by the plaintiff.

*Mesnick v. General Elec. Co.*, 950 F.2d 816, 824 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).

In support of their claims of pretext, the plaintiffs argue that significant evidence supports the conclusion that the defendant's articulated reason was a pretext for discrimination. That evidence includes their replacement by younger CSRs, several age-related remarks by a Chicopee manager, notes taken during the meeting at which the termination decision was made, an allegation that the defendant did not actually cut its budget, a finding of probable cause of discrimination by the Massachusetts Commission Against Discrimination ("MCAD"), and statistical evidence of a disparate impact on older employees.

Much of this evidence does not strike the Court as significant. The plaintiffs' statistical evidence does not tend to prove that the reduction in force at Dow Jones disproportionately affected older employees, as many CSRs and supervisors older than the plaintiffs did not suffer termination as part of the reduction in force. Further, the Court does not consider the finding of probable cause by the MCAD concrete evidence of pretext. In addition, the Court does not consider particularly persuasive the plaintiffs' thinly-supported allegation that Dow Jones did not cut its budget as explained to the plaintiffs upon termination.

The plaintiffs make some inroads, however, with their argument that the notations of "Age Issue" and "age classification" in Dow Jones manager Michael Sheehan's November 2, 1994 meeting notes indicate that the decision to termi-

nate the plaintiffs was age-related. In light of Sheehan's deposition testimony that he made the notations when "somebody raised the issue about a possible age suit," the Court does not consider the plaintiffs' contention particularly forceful when standing alone. The handwritten notes do not insinuate that the plaintiffs should be replaced because of their age or that they were terminated because of their age. In the Court's view, the handwritten notations alone indicate the commonplace awareness of the risk of litigation an employer runs when firing an employee in a protected group. *See Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 127, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) ("We are unpersuaded by respondents' argument that a violation of the Act is 'willful' if the employer simply knew of the potential applicability of the ADEA."); *Partington v. Broyhill Furniture Indus., Inc.,* 999 F.2d 269, 271 (7th Cir.1993) ("No inference of guilt can be drawn from awareness of one's legal obligations; to do so would be to promote the ostrich over the farther-seeing species."). As the Seventh Circuit has noted, however, "innocuous evidence of age awareness becomes significant in conjunction with" additional evidence of potentially discriminatory actions. *Partington,* 999 F.2d at 271–72. In this case, the plaintiffs provide more.

Viewed in a light most favorable to them, the plaintiffs' evidence indicates a deployment of younger CSRs to perform the functions assigned to the ICU after the plaintiffs' termination. In addition, the plaintiffs have presented evidence that Thomas Dalessio, the Dow Jones National Customer Relations Manager who first recommended terminating the ICU and its employees as an option for cutting costs, directed age-related comments towards the plaintiffs. Specifically, plaintiff Miklasiewicz stated in his deposition that over a three-year period when he went to Dalessio's office to ask for a raise, Dalessio rebuffed him in a serious manner, and, on different occasions, called him an "old

codger," an "old fart," an "old coot," and an "old bastard." In addition, Chester Jez, the wife of plaintiff Patricia Jez, testified to a conversation with Dalessio after the plaintiffs' termination where Dalessio stated that "Miklasiewicz was an old goat and that he had more money than you could shake a stick at." Moreover, Patricia Jez testified in her deposition that on the day of her termination, Dalessio informed her that Dow Jones was "getting rid of the gravy" through the terminations, a remark she perceived as referring to "[g]etting rid of the people that had been there too long." She also testified to Dalessio's mention of Miklasiewicz as "that old goat."

■ The defendant characterizes these statements as stray, isolated remarks uttered by a non-decisionmaker. *See Johansen v. NCR Comten, Inc.*, 30 Mass.App.Ct. 294, 568 N.E.2d 611, 615, *rev. denied*, 410 Mass. 1102, 573 N.E.2d 984 (1991) ("Stray remarks suggestive of impermissible bias" alone not sufficient to evidence that discrimination played part when plaintiff terminated nine months after employer's comment that he was "too old for the job"). Stray remarks, however, "may properly constitute evidence of discriminatory intent for the jury to consider in combination with other evidence." *McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 300 (1st Cir.1998); *see Kelley*, 140 F.3d at 347–48 (comment that timing good "to get rid of some of the older mediocre managers" had "direct bearing on age discrimination."); *Mesnick*, 950 F.2d at 825 n. 8 ("many situations [exist] where a superior's slur about persons over forty may well signal a discriminatory motive underlying an employer's decisions"); *Siegel v. Alpha Wire Corp.*, 894 F.2d 50, 55 (3d Cir.) (manager's comment that "old dogs won't hunt" sufficient to give rise to inference of discrimination that defeats summary judgment), *cert. denied*, 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). Still, the probativeness of stray

remarks "is circumscribed if they were made in a situation temporally remote from the date of the employment decision, ... or if they were not related to the employment decision in question or were made by nondecisionmakers." *McMillan*, 140 F.3d at 300–01 (citations omitted).

■ In this case, the plaintiffs present a consistent pattern of ageist remarks by a manager intimately involved in the budget cutting process. Though not the final decisionmaker, Dalessio was directly involved in the company's reduction in force. Although his alleged "old goat" comment and similar remarks to Miklasiewicz on three separate occasions on unspecified dates in 1992, 1993, and 1994 may not be temporally proximate to the date of termination, Dalessio allegedly repeated his description of Miklasiewicz as an "old goat" to a third party on the day of the firings. This pattern of repetition makes the remarks probative and troubling. *Cf. Mulero–Rodriguez v. Ponte*, 98 F.3d 670, 676–77 (1st Cir.1996) (comment that plaintiff was "too old" made eight months before termination sufficient to defeat summary judgment when nexus between comment and termination found). Further, while Dalessio's "gravy" comment appears open to an interpretation that does not implicate age—i.e., Dow Jones was getting rid of excess salary—Dalessio also uttered the comment on the day of termination and it related to the terminations, making it probative. *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 170 (1st Cir.1998) ("Statements by supervisors carrying the inference that the supervisor harbored animus against protected classes of people or conduct are clearly probative of pretext ... even if that inference is not the only one that could be drawn from the comment") (citations omitted).

The Court cannot conclude that a reasonable factfinder could not discern a nexus between the comments and the termination decision. Viewed in the context of the additional circumstantial evidence of age bias, Dalessio's comments provide evi-

dence sufficiently solid enough to allow a reasonable finder of fact to infer that the supervisor who first recommended firing the plaintiffs possessed a derogatory attitude towards older workers and that animus played out in his recommendation to fire them. In essence, the plaintiffs have presented concrete evidence suggesting that the decision to eliminate the ICU did not result from a decision-making process marked by age-neutrality. Indeed, age-related comments and notations by Dow Jones executives involved in the firings, on top of the reassignment of younger CSRs to perform the plaintiffs' duties, may make a reasonable factfinder suspect the presence of age discrimination. The Court concludes that the plaintiffs have presented sufficient evidence from which a jury could find that Dow Jones' proffered explanation constituted a pretext calculated to mask the company's discriminatory motive. Accordingly, because the plaintiffs' evidence as a whole suffices to establish a genuine issue of fact with respect to pretext, the Court denies the defendant's motion for summary judgment on the disparate treatment claims.

## B. *Disparate Impact*

■ The plaintiffs' chapter 151B claims under a disparate impact theory do not fare as well as their disparate treatment counterparts. In *Mullin v. Raytheon Co.*, 164 F.3d 696 (1st Cir.1999), the First Circuit recently considered whether a plaintiff may bring an age discrimination claim on a disparate impact theory under chapter 151B. After a thorough analysis of Massachusetts law and analogous federal age discrimination law, the court held that the Massachusetts Supreme Judicial Court would likely "hold that an age discrimination claim cannot be grounded solely on a theory of disparate impact." *Mullin*, 164 F.3d at 706. Bound by the First Circuit's precedent, this Court holds that the plaintiffs may not pursue their claims of age discrimination on a disparate impact theory. Accordingly, the Court grants the defendant's motion for summary judgment on the plaintiffs' disparate impact theory of recovery.

## C. *Miscellaneous Motions*

In a peculiar motion, the plaintiffs have moved for summary judgment on their prima facie case of age discrimination, perhaps unaware that a defendant may still gain summary judgment even if a plaintiff proves a prima facie case of discrimination. In voluminous filings, the plaintiffs appear to request an advisory opinion on the validity of the evidence they would present at trial, should the case get that far. Rule 56 of the Federal Rules of Civil Procedure does not allow for such frivolous decisions.

For the plaintiffs' benefit, the Court reiterates that in the burden-shifting analysis under *McDonnell Douglas*, proof of a prima facie case—a non-onerous task—brings the initial presumption of discrimination that often just as quickly disappears in the face of an employer's legitimate business justification for an adverse employment action. The real challenge for discrimination plaintiffs in Massachusetts often materializes at the pretext stage. While the current plaintiffs have survived summary judgment on their disparate treatment claims, they still bear the burdens of production and persuasion at trial with respect to both the prima facie and pretext stages of their claims. Accordingly, the Court denies the plaintiffs' cross-motion for summary judgment on their prima facie case.

■ In addition, the plaintiffs make a last-minute motion for certification of a question of law to the Massachusetts Supreme Judicial Court ("SJC"), clearly designed to avoid the precedential effect of the First Circuit's *Mullin* decision. Putting full faith in the thorough and well-reasoned analysis of Judge Selya's opinion, the Court declines to certify to the SJC the question of whether a plaintiff may press a disparate impact claim under chapter 151B, section 4(1B). *See generally* Bruce M. Selya, Certified Madness: Ask A

Silly Question . . ., 29 Suffolk U.L.Rev. 677 (1995) (criticizing certification as practice that does not achieve goals of improved federalism, judicial efficiency, or fairness). Accordingly, the plaintiffs' motion to certify (Docket No. 88) is DENIED.

Finally, the Court also DENIES Plaintiffs' Emergency Motion for Leave to File a Supplemental Memorandum Concerning Oral Argument Made at Summary Judgment Hearing (Docket No. 84).

## V. CONCLUSION

Having found a triable issue of fact in this case, the Court GRANTS IN PART and DENIES IN PART defendant's motion for summary judgment, granting judgment as a matter of law only on the plaintiffs' disparate impact theory of recovery.

It is So Ordered.