**Ronald LARSEN, Plaintiff,**

v.

**SIMONDS INDUSTRIES, INC., Defendant.**

**No. CIV.A.01–40059–NMG.**

United States District Court, D. Massachusetts.

Sept. 16, 2004.

Marcia L. Elliott, Elliott Law Office, P.C., Gardner, MA, for Ronald Larsen, Plaintiff.

David M. Felper, Bowditch & Dewey LLP, Jonathan R. Sigel, Bowditch & Dewey, LLP, Kathryn E. Abare, Bowditch & Dewey LLP, Worcester, MA, for Simonds Industries, Inc., Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this civil action, in which the Plaintiff, Ronald Larsen ("Larsen"), alleges that the Defendant, Simonds Industries, Inc. ("Simonds"), discriminated against him on the basis of his age in violation of Massachusetts and federal law, Simonds moves for summary judgment on all of Larsen's claims. Larsen moves, in turn, for summary judgment on both of Simonds's counterclaims.

### I. *Factual Background*

The following facts are stated as alleged in the Complaint (Docket No. 1), the Answer, Defenses and Counterclaims (Docket No. 4), the Defendant's Motion for Summary Judgment (Docket No. 40), the Plaintiff's Opposition thereto (Docket No. 45), the Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims, Count I and Count II (Docket No. 35) and the Defendant's Response and Opposition thereto (Docket No. 46).

Larsen was born on November 8, 1938 and resides in Lunenberg, Massachusetts. Simonds is a Delaware corporation with its principal place of business in Fitchburg, Massachusetts. Since 1832, Simonds and its predecessors have manufactured cutting tools and the company currently has manufacturing sites throughout the world. In 1988, Simonds was incorporated in Delaware and purchased the assets of the Simonds Cutting Tools Division of Household Manufacturing, Inc., a wholly-owned subsidiary of Household International, Inc.

In 1969, Larsen was hired by a predecessor to Simonds. In 1979, he was promoted to Manager, Shop Operations. In 1984, Larsen became Manager, Manufacturing Services and, in 1986, he became Manager, Plant Operations, which actually entailed service as Manufacturing Manager for the Metal Group in Simonds's Fitchburg Location.

In 1999, the management of Simonds concluded that it could save over $1.5 million per year by eliminating redundant positions at the company. To execute its reduction-in-force ("RIF"), Simonds compiled a list matching potentially redundant positions with the employees holding those positions and identified each employee's age, tenure, position and salary. The objectives of the RIF and the list were provided to the human resources and legal departments for an evaluation and determination of whether the RIF would have a disproportionate impact upon any legally protected group. While Larsen does not dispute the fact that Simonds took those actions, he does contend that the RIF was the result of annual budget cuts rather than an "overall plan of the Defendant."

As part of Simonds's efforts to reorganize and/or reduce the expenses associated with its operations, Larsen's position was eliminated along with the positions of the other managers at his level. On January 7, 2000, Larsen's employment was terminated by John Jordan, Plant Manager at Simonds's Fitchburg facility. After that meeting, Larsen met again with Mr. Jordan and with Ilda Thibodeau, Manager of Compensation and Benefits and was instructed to sign a waiver and release of claims. Larsen was told that his receipt of severance benefits, including four months' pay, was contingent upon his signing the waiver and release of claims. Simonds claims that it recommended that Larsen not sign the waiver until he had an opportunity to review it with counsel, but Larsen declined to heed that advice. He executed the agreement on January 7, 2000.

In or about February 2000, Larsen and James Bourque ("Bourque"), another employee whose position at Simonds had been

eliminated, interviewed for a position as Plant Manager at Simonds's facility in Newcomerstown, Ohio. Bourque, who was born on September 23, 1951, was selected for the position. Simonds claims that Bourque was selected because (1) Larsen's management style was viewed as confrontational and incompatible with the company's new, more team-oriented operating system, (2) it was concerned that Shirley Osler, the human resources manager at the Newcomerstown facility, would have to report to Larsen because Larsen had been disciplined in 1999 for allegedly sexually harassing Ms. Osler and (3) Bourque had received a higher evaluation rating than Larsen during the most recent performance review.

Larsen alleges that during its RIF, Simonds reduced its managerial and administrative (nonunion) workforce in Fitchburg by 17 employees. Larsen asserts that 14 of those 17 eliminated employees were over the age of 40 (the age at which the ADEA prohibits discrimination in employment decisions) and that after the RIF was completed, the subject workforce had been reduced by 27 employees over the age of 40 while the number of employees under age 40 had been reduced by one. Larsen claims that, based upon a statistical analysis performed by his expert, Simonds replaced a significant number of its age-protected employees affected by the RIF with newly-hired, younger employees in the relevant classifications.

On July 5, 2000, Larsen filed a charge of age discrimination against Simonds at the Massachusetts Commission Against Discrimination ("MCAD"), which was cross-filed at the U.S. Equal Employment Opportunity Commission ("EEOC"). On January 5, 2001, Larsen requested the withdrawal of his charges from the MCAD and EEOC. He received a dismissal and notification of rights from MCAD on January 22, 2001 and a notice of right to sue from the EEOC on February 27, 2001. Larsen filed the complaint in this action on April 10, 2001, alleging violations of:

(1) M.G.L. c. 151B and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 for unlawful termination of employment (Counts I and III, respectively) and failure to hire (Counts II and IV, respectively),

(2) the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f) as codified at 29 C.F.R. § 1625.22 (Count V) and

(3) the Civil Rights Act of 1991 ("CRA"), 42 U.S.C. § 1981a.

Now pending are Defendant's Motion for Summary Judgment (Docket No. 39), in which Simonds seeks to dismiss Larsen's complaint in its entirety, and Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims (Docket No. 34).

## II. *Legal Analysis*

### A. **Standard of Review**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *quoting Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not

be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

## B.  Analysis

### 1.  Age Discrimination Claims

Federal and Massachusetts state courts have adopted a three-part burden-shifting framework for determining whether a plaintiff can sustain an age discrimination claim. *See Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1117 (1st Cir. 1993), *citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Blare v. Husky Injection Molding Sys.,* 419 Mass. 437, 440–43, 646 N.E.2d 111, 114–16 (1995). First, the Plaintiff must present a prima facie case of discrimination. The Plaintiff's burden to establish such a case is "not onerous," *see Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 719 (1st Cir.1994); *Flebotte v. Dow Jones & Co., Inc.,* 51 F.Supp.2d 36, 41 (D.Mass.1999), and, to do so, he must show by a preponderance of the evidence that (1) he was a member of the protected class (in the instant case, all

individuals over 40 years old), (2) he met the employer's legitimate job performance expectations, (3) he experienced adverse employment action and (4) his employer did not treat age neutrally or younger persons were retained in the same position. *See Brennan v. GTE Gov't Sys. Corp.,* 150 F.3d 21, 26 (1st Cir.1998).

After the Plaintiff establishes the prima facie requirements of an age discrimination claim, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision. *See id., citing Thomas v. Sears, Roebuck & Co.,* 144 F.3d 31, 32–33 (1st Cir.1998). If the employer meets its burden, the presumption of discrimination disappears, *see Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir.1995), and the burden returns to the Plaintiff to prove that the employer's stated reason is a pretext for discrimination. *See Kosereis v. Rhode Island,* 331 F.3d 207, 212 (1st Cir.2003), *citing Zapata–Matos v. Reckitt & Colman, Inc.,* 277 F.3d 40, 44 (1st Cir. 2002).

█  In cases involving discrimination based upon disparate treatment, summary judgment is generally a disfavored remedy because the ultimate issue of motive or intent is one of fact. *See Blare v. Husky Injection Molding Sys.,* 419 Mass. 437, 439, 646 N.E.2d 111, 114–16 (1995); *Brunner v. Stone & Webster Eng'g Corp.,* 413 Mass. 698, 705, 603 N.E.2d 206, 211 (1992). As the Supreme Judicial Court of Massachusetts has explained, the ultimate question of a defendant's state of mind

is elusive and rarely is established by other than circumstantial evidence which requires the jury to weigh the credibility of conflicting explanations of the adverse hiring decision. *Blare,* 419 Mass. at 439–40, 646 N.E.2d at 114, *citing Wheelock College v. Massachusetts Comm'n*

*Against Discrimination,* 371 Mass. 130, 137, 355 N.E.2d 309, 314 (1976).

■ In the instant case, there are genuine issues of material fact with respect to whether Simonds's RIF violated the ADEA and Chapter 151B and summary judgment is therefore unwarranted. Simonds concedes that Larsen has established the first three elements required to prove a prima facie case of age discrimination (Larsen is over 40 years old, he met Simonds's legitimate job performance expectations and he experienced an adverse employment action). However, Simonds "adamently denies" Larsen's claims with respect to the fourth element of the prima facie case for age discrimination, i.e. that it failed to treat age neutrally and that younger persons were retained in the same position from which Larsen was terminated.

There is a genuine issue of material fact inherent in that dispute. Larsen notes that, as part of Simonds's RIF in 2000, the company eliminated all members of Plaintiff's level of management, five of whom were over the age of 40 and three of whom were over the age of 60. One of those terminated employees was later rehired and, upon his return to Simonds, observed that a 33 year-old employee had been performing the substantially similar job Larsen performed prior to his termination.[1] Larsen also states that his superiors made several comments regarding his age shortly before his termination and again when he was under consideration for the position at Simonds's Newcomerstown facility.

Simonds responds that the facts proffered by Larsen fail to establish a prima facie claim of age discrimination. Specifically, Simonds asserts that, with respect to the comments made to Larsen about his age, "[i]solated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent." *Lehman v. Prudential Ins. Co. of America,* 74 F.3d 323, 329 (1st Cir.1996). Moreover, Simonds notes that James Bourque, who was 48 years old at the time, was hired as the Plant Manager at Simonds's Ohio facility and that Mr. Bourque's membership in the same protected class as Larsen precludes Larsen from establishing a prima facie case of age discrimination.

Larsen's prima facie case, as well as questions relating to whether Simonds's RIF program was pretextual are most appropriately left to a jury.[2] Significant and material facts in the instant case remain in dispute. Those disputes relate primarily to whether Simonds treated age neutrally or retained younger employees in Larsen's position and whether Simonds's RIF (an ostensibly legitimate, nondiscriminatory reason for reducing its number of employees) was pretextual. Thus, Simonds's motion for summary judgment with respect to Larsen's state and federal claims of age discrimination will be denied and those claims will be tried to a jury.

### 2. Older Workers Benefit Protection Act Claim

In Count V of his Complaint, Larsen alleges that Simonds violated the OWBPA

---

**1.** Simonds argues that Larsen may not rely upon that fact because it was not raised in Larsen's administrative complaint but that assertion is unpersuasive because Larsen seeks merely to supplement the facts contained in his administrative complaint rather than to introduce a new claim that was not previously raised. *Cf. Lattimore v. Polaroid Corp.,* 99 F.3d 456, 464–65 (1st Cir.1996) (explaining that a complaining party may not later add a new claim that is beyond the scope of an administrative complaint.)

**2.** The competing statistical analyses presented to show either the presence or absence of a disparate impact on protected employees creates a classic "battle of the experts" that is properly resolved by a jury.

by presenting Larsen with a waiver and release of claims that did not include a 21–day review period, did not waive age discrimination claims and did not include a list of employees affected by the RIF. Simonds moves for summary judgment on that count on the ground that even if the signed waiver violated the OWBPA, such a violation may not form the basis of an independent cause of action for legal damages. *See Massachusetts v. Bull HN Info. Sys.*, 143 F.Supp.2d 134, 158 (D.Mass. 2001).

■ Notwithstanding Larsen's somewhat convoluted argument to the contrary, Simonds is correct and Larsen's claim for damages based upon a violation of OWBPA is insufficient as a matter of law. As this Court explained in *Bull*, a plaintiff who has signed a waiver that violates the OWBPA may be entitled to declaratory judgment voiding such a waiver. *Id.* The plaintiff may not, however, recover money damages based upon a violation of OWBPA, unless he also sustains a claim of substantive age discrimination. *Id.* Because Larsen's substantive ADEA claim will proceed to trial, the need for a separate claim for violation of OWBPA is eliminated. Accordingly, Simonds is entitled to summary judgment on Larsen's independent claim for violation of the OWBPA (Count V).

### 3. Civil Rights Act of 1991 Claim

■ In Count VI, Larsen asserts a claim for violation of the CRA and seeks damages for pecuniary and nonpecuniary losses suffered in connection therewith. Simonds argues that it is entitled to summary judgment on that claim because the CRA fails to provide an independent cause of action upon which Larsen may proceed. Larsen responds by noting that this session of this Court allowed, by endorsement, a Plaintiff in an earlier case to

amend her complaint to include a separate claim for a CRA violation. *See Olszak v. Julie Country Day School*, Civil Action No. 97–40207–NMG.

The law is unsettled on this question. While the First Circuit Court of Appeals has not directly addressed the issue, the Seventh Circuit Court of Appeals has held that the CRA "merely creates an additional remedy for actions brought under Title VII", rather than "a distinct cause of action[.]" *Varner v. Illinois State University*, 150 F.3d 706, 718 (7th Cir.1998), *vacated and remanded*, 528 U.S. 1110, 120 S.Ct. 928, 145 L.Ed.2d 806 (2000). The court interpreted the CRA narrowly, as permitting the augmentation of damages recoverable for violations of Title VII rather than separate causes of action for such a violation. Thus, Larsen's claim for damages based upon a violation of the CRA fails as a matter of law.

When Congress passed the CRA it amended 42 U.S.C. § 1981a to provide appropriate remedies, including compensatory and/or punitive damages, for intentional discrimination and unlawful harassment in the workplace. *See* Civil Rights Act of 1991, Pub.L. No. 102–66, 105 Stat. 1071 (codified as amended in scattered sections of 42 U.S.C.). Notwithstanding the statute's relatively limited purpose, this Court concludes that the inclusion of a separate claim for a violation of the CRA is prerequisite to recovery of damages thereunder.

The decision of the court in *Varner* does not mandate a contrary conclusion. In that case, the court held that the CRA did not create a distinct cause of action only in the sense that courts do not require a specific statement from Congress that the CRA abrogated state sovereign immunity under the Eleventh Amendment. *See Varner*, 150 F.3d at 718. It concluded that the well-settled abrogation of sovereign immunity under Title VII obviates the

need for a separate congressional statement under the CRA. *See id., citing Fitzpatrick v. Bitzer,* 427 U.S. 445, 448–49, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

Indeed, courts in this jurisdiction have implicitly endorsed that interpretation and have approved the inclusion of a claim under the CRA as a separate count in a complaint. *See, e.g., Pomales v. Celulares Telefónica, Inc.,* 342 F.3d 44, 46 (1st Cir. 2003) (upholding a complaint alleging, among other counts, independent violations of Title VII, the CRA and 42 U.S.C. § 1981). Thus, Simonds's motion for summary judgment with respect to Count VI (violation of the CRA) will be denied and Larsen's damages, if any, for intentional age discrimination will be addressed at the appropriate time in the event he proves Simonds's liability at trial.

### 4. Simonds's Counterclaims

Finally, Larsen moves for summary judgment on both Counts of Simonds's counterclaim. In those counterclaims, Simonds (1) alleges that Larsen breached the terms and conditions of the waiver and release of claims he signed on January 7, 2000 and (2) seeks the rescission of the waiver and release and to require Larsen to refund Simonds's payment of four months of separation compensation, plus interest and costs.

Larsen asserts that 1) the waiver and release of claims did not apply to claims for unlawful discrimination and 2) Simonds is judicially estopped from arguing that Larsen waived claims of age discrimination because the company asserted the contrary in a position statement filed with the MCAD on September 6, 2000.[3] Larsen similarly argues that the waiver and release of claims was invalid under federal law because it did not satisfy the requirements established by the First Circuit Court of Appeals for a knowing and voluntary waiver of non-ADEA general employment claims. *See Smart v. Gillette Co. Long–Term Disability Plan,* 70 F.3d 173, 181 n. 3 (1st Cir.1995).

Simonds responds by noting that the terms of the waiver are unambiguous and that, as a matter of contract interpretation, extrinsic evidence of Simonds's statements to the MCAD is therefore inadmissible. *See Massachusetts Mun. Wholesale Elec. v. Danvers,* 411 Mass. 39, 48, 577 N.E.2d 283, 289 (1991); *Merrimack Valley Nat'l Bank v. Baird,* 372 Mass. 721, 723, 363 N.E.2d 688, 690 (1977). Moreover, Simonds contends that the doctrine of judicial estoppel is inapplicable here because that doctrine requires "that the party being estopped have succeeded previously with a position directly inconsistent with the one it currently espouses", *Lydon v. Boston Sand & Gravel Co.,* 175 F.3d 6, 12– 13 (1st Cir.1999), and Simonds was unsuccessful before the MCAD.[4]

■ Genuine issues of material fact exist with respect to whether the Terms and Conditions of Separation constituted a valid waiver and release of Larsen's non-ADEA age discrimination claims. A jury is the appropriate arbiter of Larsen's credibility and whether the waiver and release was knowing and voluntary. The jury should also determine whether the waiver and release satisfied the relevant requirements under federal law. It is similarly appropriate for a jury to decide whether Larsen breached the agreement embodied in the waiver by filing the instant action.

---

**3.** Simonds concedes that the waiver and release did not constitute a waiver of Larsen's ADEA claim.

**4.** Indeed, the MCAD issued no decision because Larsen withdrew his case in order to file this action.

If so, Larsen may be liable to Simonds for repayment of his severance benefits.

■ Finally, there are genuine issues of material fact with respect to Simonds's counterclaim for rescission. Although he immediately executed the waiver and release on January 7, 2000, Larsen testified that he did so with the intent to later consult a lawyer and to collect unemployment. Larsen's state of mind and his credibility is best determined by a jury and that jury may properly ascertain whether Larsen possessed the proper mental state to establish a fraudulent intent and thereby to sustain Simonds's claim of rescission. Larsen's Motion for Summary Judgment on Defendant's Counterclaims accordingly will be denied.

### ORDER

Based upon and in accordance with the foregoing, the Defendant's Motion for Summary Judgment (Docket No. 39) is, with respect to Count V (violation of OWBPA) **ALLOWED** and, with respect to Counts I through IV and Count VI, **DENIED.** The Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims (Docket No. 34) is **DENIED.**

With respect to other pending motions, The Defendant's Motion for Leave to File Reply Memorandum (Docket No. 47) is **ALLOWED** and the motion of Plaintiff, Ronald Larsen to file a surreply, to Submit the Affidavit of Shirley Osler and to Strike the Affidavit of Ilda Thibodeau (Docket No. 48) is, with respect to the Motion to Strike, **DENIED** and otherwise **ALLOWED.**

So ordered.